[No. 4385.]

## JAMES L. KING *v.* O. H. LAGRANGE.

WILL OF HUSBAND DEVISING COMMUNITY PROPERTY.—If a married man, by will, devises his real estate to his wife, and the same is community property, and there is nothing on the face of the will to show that he intends to devise more than the undivided half which is subject to his testamentary disposition, and, after the death of the testator, the executor, under a power of sale in the will, and in ignorance of the law which allows the wife to inherit one-half of the community property, sells and conveys the right of the testator to all the land, and the purchaser, also in ignorance of the law, supposes he is buying the entire property, and the wife, also in ignorance of the law, receives the purchase-money, she does not thereby waive her right to the undivided half of the property which the statute permits her to inherit.

IDEM.—In such case there is no alternative by which the widow is required to elect whether she will take under the will, or repudiate it and claim her inheritance under the statute.

ELECTION OR RATIFICATION.—The essence of either an election or ratification is, that it was done with full knowledge of the party's right.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

Ejectment to recover an undivided one-sixth of a lot in San Francisco, sixty feet by sixty, on the north line of Commercial street, between Montgomery and Kearny streets.

The lot was purchased by the firm of Curtis, Perry & Ward, prior to the year 1853, and was held by them as tenants in common at the time of the death (March 22, 1853) of Samuel H. Ward, a member of the firm.

At the time of its purchase, Emily H. S. Ward was the wife of Samuel H., and survived him. The lot was community property.

Ward left a will, by which he appointed his partners, Curtis and Perry, his executors, "with full power to man-

age, sell, dispose of, and control all my estate, real, personal, and mixed, in such manner as to them shall seem meet, and as I might do if living." Curtis failed to qualify and Perry became the sole executor.

The will was probated in the Probate Court of San Francisco, on the 18th day of August, 1853. Subsequently, on the 29th of August, 1853, Perry, under the power vested in him by the will, in consideration of $13,333.33, sold and conveyed to Joseph R. Curtis, all the right, title and interest of said Ward in the lot of land in question. Afterwards, in 1854, Curtis sold and conveyed the lands to James Guthrie, Secretary of the Treasury, on account of the United States, and the premises have been since used as a branch mint.

Mrs. Ward, as the undivided one-third part of the lot was community property, claimed that the will operated only upon the undivided one-half of this one-third, and that she continued to be the owner of the remaining one-half, and by her attorney in fact, Henry W. Starr, conveyed her interest in the property, in 1865, to the plaintiff.

Mrs. Ward never resided in California, but was a resident of Middletown, Connecticut.

The sale of the one-third of the lot to Curtis, and the price received for it, was known to Mrs. Ward, and to her brother, said Henry W. Starr, who was in California at the time of the sale, and Mrs. Ward received nine-tenths, and Mrs. Verner one-tenth of such price, without objection by Mrs. Ward.

The executor's accounts were filed in the Probate Court.

The sale of the executor to Curtis was made before it had been determined in this State by judicial decision, that the provision of the statutes of April 17, 1850, giving to the husband the "absolute power to dispose of" the common property of husband and wife, did not extend to disposal by will. By the law, therefore, Mrs. Ward inherited an undivided half of the demanded premises.

The defendant was superintendent of the mint. The court below rendered judgment for the defendant, and the plaintiff appealed.

*Crane & Boyd,* for the Appellant.

When Ward died, one undivided third of the premises in controversy was community property; one-half of which, or one-sixth of the whole, became vested in his widow, Emily H. S. Ward, subject to the payment of the debts of the deceased. (Laws of 1850, 255, Sec. 11.)

Mrs. Ward did not lose her interest in the community property. The will of Ward, both by its terms and by operation of law, only disposed of his half of the community property. There is nothing in it which puts the widow to her election as to whether or not she will take under the will and abandon her community interest; and by accepting the proceeds of the sale of her husband's interest in the land, she did not waive her right—

1. At the common law to dower. (4 Kent's Com. 60; *Adsit* v. *Adsit,* 2 John. Ch. 448.)

2. Nor under our system, in the community property. (*Beard* v. *Knox,* 5 Cal. 252; *Godey* v. *Godey,* 39 Cal. 164; *Estate of Silvey,* 42 Cal. 210.)

The evidence does not show that Mrs. Ward would have been equitably estopped from maintaining this action, nor does it show that her grantee, King, is now so estopped.

As we understand the position of counsel for the respondent, it is not claimed that Mrs. Ward said or did anything, or omitted to do or say anything prior to the sale by Perry, the executor, to Curtis, which induced the latter to buy the property, but that the alleged equitable estoppel was worked when she received nine-tenths of the $13,333.33 paid by Curtis as the consideration-price to Perry.

Under these circumstances, if there was an estoppel, it must be put upon the ground of ratification; that is, that Perry, being the agent of Mrs. Ward, assumed to act as such, and she afterwards, upon being apprised of his action, ratified it, and therefore is now estopped to deny its validity.

To maintain this position, it must appear that Perry assumed to act as the agent of Mrs. Ward. There is no evidence that he assumed to act as her agent.

Ward, in his will, gave his executors power "to manage, sell, dispose of, and control all my estate." This referred only to his undivided half of the community property, and so Perry was bound to understand it.

Perry, as executor, sold to Curtis under the power vested in him by the will, and he only pretended to convey "all the right, title and interest of Ward, which was merely in one-half of the community property.

Curtis must be presumed to have been aware of the precise interest he was taking, as he was a tenant in common of Ward in the same lot; had been nominated an executor, and was further put upon notice by the fact that the deed to him was limited to the interest which Perry had power to convey.

Perry did not assume to, nor did he sell in the name of Mrs. Ward.

It must further appear that Mrs. Ward was informed of all the facts and circumstances surrounding the sale to Curtis, as well as of the condition of her own title, and that Perry had assumed to sell her interest, and then that after such knowledge, she received the money, as the purchase-price of her interest in the land with the intention to take it in lieu of such interest. (*Dupont* v. *Werthman*, 10 Cal. 367; *Billings* v. *Morrow*, 7 Cal. 171; *Davidson* v. *Dallas*, 8 Cal. 227; *Marziou* v. *Pioche*, 8 Cal. 522; *Blen* v. *Bear River Mining Co.*, 20 Cal. 602; 2 Story Eq. Juris., Sec. 1097; *Laurence* v. *Brown*, 1 Seld. 401; *Bass* v. *Worth*, 40 Barb. 654; *Cumberland Coal Co.* v. *Sherman*, 20 Maryland, 117; *Flege* v. *Garvey*, 47 Cal. 371.)

*L. D. Latimer*, for the Respondent.

It seems clear that the testator used the word *estate* as including all the property he possessed at the time of his death.

Mrs. Ward received from the executor and retains the purchase-money paid for the entire one-third of the lot. She has not offered to return any portion of it. The presumption is, that she knew when she received it that it was

the proceeds of the sale, but whether she did or not is immaterial.

The fact that she still retains it is undisputed. She cannot have both the money and the land. This is a principle of equity founded upon reasons so plain that it need but be stated.

By the receipt of the money she ratified the sale, and she is now estopped from asserting title to that part of the lot sold, the proceeds of which she received and retains. (2 Smith's Leading Cases, 6th Am. ed. 769–70; *Smith* v. *Warden*, 7 Har. 424; *The State* v. *Stanley*, 14 Ind. 109; *Table* v. *Wiseman*, 2 Ohio St. 217; *Maple* v. *Kussart*, 53 Penn. 352; Simpson's Appeal, 8 Penn. 199.)

By the COURT:

The will of Samuel H. Ward, deceased, purports to devise an undivided one-tenth of his real estate to his sister, Mrs. Verner, and all the rest and residue thereof to his wife, from whom the plaintiff deraigns his title. There is nothing on the face of the will to indicate that the testator attempted to devise property of which he had not the disposition, nor does the deed executed by Philo H. Perry, executor, under the power in the will, purport to convey any other estate than "the right, title and interest" of the testator in the property described in the complaint. There was, therefore, no alternative upon which the election of the widow could be exercised. If, in ignorance of the law, the executor supposed he was selling, and the purchaser supposed he was buying a larger interest than belonged to the estate, it was the misfortune of the latter. There is nothing in the record to show that the widow was better informed than they when she accepted her portion of the proceeds of the sale. If ignorance or mistake of law should enlarge the estate transferred by the executor's deed, it should excuse her, for the very essence either of an election or ratification is, that it is done advisedly, with full knowledge of the party's rights.

It is said that if the wife intended to insist upon her right to one-half of the common property, she should have repu-

diated the provisions in the will in her favor. But the deceased had full right to dispose of his own half of the community property, and, as the case is presented, two circumstances are lacking in the proofs: First. That he attempted to dispose of more; and, second, that she knowingly performed any act indicating, or which could be construed to be, a waiver of her rights under the will. The devise must be read as applying only to the estate within his power of testamentary disposition. As was said in the *Estate of Silvey,* " A purpose to attempt the disposition, by will, of property which, by statute, would pass to the wife, as survivor of the matrimonial community immediately upon his death, is not to be readily inferred, especially where, as here, the words employed by the testator may have their fair and natural import by applying them to that of which he had by law the testamentary disposition." (42 Cal. 213.)

Order reversed.