[Civil No. 1334.   Filed January 2, 1914.]

[137 Pac. 426.]

LYMAN D. LA TOURETTE, VERNE G. LA TOURETTE
and CORA LA TOURETTE, Guardian of the Estate of
RENA C. LA TOURETTE, JOHN W. LA TOURETTE,
CHARLOTTE E. LA TOURETTE and EMERY E. LA
TOURETTE, Appellants, v. PETER LA TOURETTE,
Executor of the Last Will and Testament of JOHN LA
TOURETTE, Deceased, and ROSE ANN LA TOUR-
ETTE, PETER LA TOURETTE, CORNELIA ANN
MUNDS, ROSE OLIVE SHERIDAN and VIOLA
WELLS, Appellees. .

1. HUSBAND AND WIFE—COMMUNITY PROPERTY—RIGHTS OF PARTIES.—
   Civil Code of 1901, paragraphs 2124, 2125, 3102, 3104, 3108–3110,
   defining separate property of husband and wife and community
   property, and providing that community property passes to the sur-
   vivor, if decedent leaves no children, while, if he leaves children,
   the surviving wife shall be entitled to one-half of the community
   property, charged with debts, recognize a marital community
   wherein both husband and wife are equal, and though, during the
   marriage, the personal property of the community may be disposed
   of by the husband, a sale or encumbrance of the real estate may
   not be made without the wife joining, and the interest of the wife
   in community property during marriage is not a mere possibility
   or an expectancy, and, on the death of the husband, she acquires
   the right to control and dispose of her share.

2. WILLS—CONSTRUCTION—INTENTION OF TESTATOR.—The court must
   construe a will according to the intention of testator.

3. WILLS—CONSTRUCTION—PAROL EVIDENCE.—Parol evidence is admis-
   sible to aid in construing a will by showing the surrounding cir-
   cumstances, thereby placing the court in the position of the testator,
   but the intent of testator to dispose of his property must appear
   from the will itself, and cannot be proved by parol.

4. WILLS—CONSTRUCTION—PROPERTY DEVISED.—Where a testator, own-
   ing only an undivided interest in real estate, disposes by his will
   of his property only, and by same words gives benefits to his wife,
   who is his co-owner, the wife need not elect between the benefits
   conferred by the will and her own share in the property, but she may
   take the benefits and her own share.

5. WILLS—CONSTRUCTION—PROPERTY DEVISED.—A testator must be pre-
   sumed not to intend to devise any property over which he had no

power of testamentary disposition, and his will must be read as applying only to the property within the power of his disposition.

6. WILLS—CONSTRUCTION—PROPERTY DEVISED.—Where a will executed by a husband, who, with his wife, was in possession· of community property, gave to his wife for life all of the property of which he might die possessed, with a gift over of what she was possessed at her death, the wife was not required to elect between the benefits conferred by the will and her own share but she could take ̇her share and a life estate in the other share.

7. WILLS—ELECTION—EFFECT.—Where a widow makes an election between the interest devised by her husband's will and her own interest in the property on the supposition that a duty of election devolved on her, when no necessity for an election existed, the election was ineffectual.

8. LIFE ESTATES—DISTRIBUTION UNDER WILLS—SECURITY FROM LIFE TENANT.—Where testator gave all the property of which he died seised to his wife for life, with gift over of what remained at her death, and empowered his executors to sell, with the approval of the wife, to provide for her, the court distributing the personal estate to her for life was not required to exact from her security for the management of the personalty.

9. HUSBAND AND WIFE — COMMUNITY PROPERTY — ADMINISTRATION — JURISDICTION OF COURT.—The court, in administering community property disposed of by the will of the deceased husband, may assume jurisdiction of the whole of the community estate to determine the debts chargeable against it, and to direct their payment out of the community property.

[As to election by widow as between what her husband's will gives her and the estate which the law confers, see note in 92 Am. St. Rep. 695.]

APPEAL from a judgment of the Superior Court of the County of Maricopa. J. C. Phillips, Judge. Affirmed.

The facts are stated in the opinion.

Messrs. Armstrong & Lewis, for Appellants.

Messrs. O'Neill & McKean, for Appellees.

FRANKLIN, C. J.—John La Tourette, the deceased, left surviving him a widow and children. The will of deceased was duly admitted to probate. Omitting the formal parts, it is as follows:

"I, John La Tourette, of Phoenix, county of Maricopa, Arizona territory, of the age of seventy (70) years, and being of sound disposing mind and memory, and not acting under duress, menace, fraud, or under the influence of any person whatever, do make, publish and declare this my last will and testament in the manner following, that is to say:

"First, I direct that my body be decently buried and in a Christian manner, without undue ceremonies, and that the expenses of my last sickness and funeral be first paid by my executor hereinafter named, from my estate.

"Secondly, I give, devise and bequeath unto my beloved wife Rose Ann La Tourette, of Phoenix, Arizona, all of the property of which I may die possessed, of any and every nature, and wheresoever situate, whether the same be real, personal or mixed, to have, hold, use and enjoy the same, for the purpose of yielding to her a good, comfortable and certain and satisfactory living during her natural life, and I desire and direct, that after her death all of said property of which she is then possessed shall go to our surviving children, and to the issue of those who may be dead, to the extent of the share which would have gone to the deceased parent, if alive, share and share alike.

"The names of our now surviving children are: Peter La Tourette, 36 years old, of Phoenix, Arizona, James T. La Tourette, 34 years old, of Phoenix, Arizona, Cornelia Ann Munds, 31 years old, of Phoenix, Arizona, Rose Olive Sheridan, 28 years old, of Phoenix, Arizona, Viola Wells, 24 years old, of Phoenix, Arizona, and they are to be the participants in said distribution, above mentioned, or in the event that any of them is dead leaving issue the issue shall receive the share that would have gone to the dead parent, if alive; and in the event of the death of any of the above named five children, before such distribution, without issue, the share of such one shall be divided share and share alike among the surviving ones, as above arranged.

"I hereby direct, authorize and empower, my said executors to sell and dispose of any or all of the property whether personal or real, at any time, when they deem it necessary, upon the consent and approval of my beloved wife, and without the necessity of having or obtaining the consent or approval of any court, and with or without notice.

"It being my wish, desire and intention to provide, beyond doubt, and to her satisfaction, a living and money to satisfy the desires of my beloved wife during her natural life, I hereby direct and order that my said executors shall at all times first see and attend to that, and if necessary, to sell and dispose of any of the said property for the said purpose.

"Lastly: I hereby nominate and appoint my sons Peter La Tourette and James T. La Tourette the executors of this my last will and testament, without bonds of any kind and hereby revoke all former wills by me made."

By a codicil to this will, the testator mentioned one of his daughters, who was indebted to him, and directed that such indebtedness specifically named in character and amount be deducted from the share that would go to her or, in the event of her death, to her children.

All of the estate involved was the community property of the deceased and his surviving wife, Rose Ann La Tourette. After administration had on this community estate, and upon the final settlement of the accounts of the executor, there was a decree of distribution. In this decree the court distributed "An undivided one-half (½) of said residue to Rose Ann La Tourette, to have, hold, use, and enjoy the same for the purpose of yielding her a good, comfortable, certain, and satisfactory living, and money to satisfy the desires of said Rose Ann La Tourette during her natural life, and after her death, all of said property of which she is then possessed shall go to Peter La Tourette, the issue of James T. La Tourette (deceased), Cornelia Ann De Mund, Rose Olive Sheridan, subject to the payment of certain notes and sums as set forth in the codicil of the last will and testament of said John La Tourette, and Viola Wells, and in the event of the death of any of the above-named children leaving issue, the issue shall receive the share that would have gone to the dead parent, if alive, and in the event of the death of any of the above-named legatees and devisees before distribution and without issue, the share of such one shall be divided share and share alike among the surviving ones as above arranged; the remaining one-half (½) of said residue to Rose Ann La Tourette, surviving widow of deceased, absolutely and in fee."

This appeal involves the validity of the decree. It is claimed that the decree of distribution is contrary to the

terms of the will of the deceased, and erroneous because the surviving widow has never renounced or in any wise excepted to the terms of the will. The necessity for an election by the widow is pressed, because by the terms of the will it is claimed that there was an intent upon the part of the testator to give to the wife a life estate in the whole of the community property in lieu of her own proprietary right therein; that thereby the widow was put to an election either to take her share in the community property, as provided by law, or to take the right and interest therein given her by the will; that she may not take both, and having failed to make an election, she will be deemed to have accepted and taken only the interest given her by the will. It is also urged that the decree of distribution is wrong in not safeguarding the interest of the remaindermen by requiring the widow, as a trustee of such remaindermen, to give security for the proper holding and distribution of the personal property coming into her hands under the will.

We are asked to construe this will, and, as a necessary background to consider its effect, let us examine somewhat into the rights of married persons with respect to their property interests. These rights are defined in the law, and we shall quote the following provisions of the Revised Statutes of 1901, as pertinent to the question presented.

"Par. 3102. (Sec. 16.) All property, both real and personal, of the husband, owned or claimed by him before marriage and that acquired afterward, by gift, devise or descent as also the increase, rents, issues and profits of the same, shall be his separate property, and all property both real and personal of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, as also the increase, rents, issues and profits of the same, shall be her separate property."

"3104. (Sec. 18.) All property acquired by either husband or wife during the marriage, except that which is acquired by gift, devise or descent, or earned by the wife and her minor children, while she has lived or may live separate and apart from her husband, shall be deemed the common property of the husband and wife, and during the coverture personal property may be disposed of by the husband only;

but the wife must join in all deeds and mortgages affecting real estate except unpatented mining claims.''

"3108. (Sec. 22.)   The community property of the husband and wife shall be liable for the community debts contracted by the husband during marriage, except in such cases as are specially excepted by law.

"3109. (Sec. 23.)   The wife may contract debts for necessaries for herself and children upon the credit of her husband, in which case she and her husband must be sued jointly.

"3110. (Sec. 24.)   Upon the trial of any suit as provided for in the preceding section the court shall decree that the execution be levied, first upon the common property, second upon the separate property of the husband, third upon the separate property of the wife.''

"2124. (Sec. 9.)   Upon the dissolution of the marriage relation by death, all the common property belonging to the community estate of the husband and wife shall go to the survivor if the deceased have no child or children; but if the deceased have a child or children, his survivor shall be entitled to one-half of said property and the other half shall pass to the child or children of the deceased.

"2125. (Sec. 10.)   In every case the community estate passes charged with the debts against it.''

By the provisions of the law married persons have two distinct and well-defined property rights.   The first is the separate property of each of the spouses, and the second is the community property belonging to both.   In construing the will we shall be aided materially in determining its consequence by some reflection upon the nature and character of this estate known as community property.   And the observations we shall indulge will, of course, be limited in their application to the point under consideration and the facts before us, except, as in cases by analogy, they may elsewhere be applicable.

The law makes no distinction between the husband and wife in respect to the right each has in the community property. It gives the husband no higher or better title than it gives the wife.   It recognizes a marital community wherein both are equal.   Its policy plainly expressed is to give the wife in this marital community an equal dignity, and make her an equal factor in the matrimonial gains.   It recognizes that property

acquired during marriage by community funds or the labor and industry of either spouse, except what is earned by the wife and her minor children while she has lived or may live separate and apart from the husband, is the common property of the husband and wife. All that either the husband or wife or both may acquire during the existence of the marriage, otherwise than is specifically excepted, is an acquest of the community, and the presumption in all doubtful cases is strongly in favor of treating that which either spouse may own as community property. It recognizes that the wife in her station is as much an agency in the acquisition as the husband, and is entitled to just as great an interest. It is altogether fitting and proper that woman should be thus esteemed by the law in fixing her status if she is to be considered in fact as well as in theory an essential factor in the economy of the marital community. It is true that during the coverture the personal property belonging to the community may be disposed of by the husband only; but it is equally true that no sale or encumbrance of the real estate may be made by the husband without the consent of the wife. She must join in all deeds and mortgages affecting real estate, except unpatented mining claims.

The law, in giving this power to the husband during coverture to dispose of the personal property, does not do this in recognition of any higher or superior right that he has therein, but because the law considers it expedient and necessary in business transactions affecting the personalty to have an agent of the community with power to act. So it has clothed the husband with this agency, deeming him the best qualified for the purpose, but limiting such agency to the personalty and during the period of coverture. And this agency to dispose of the community personalty may not be exercised by the husband to defraud his wife, for in one way or another she would have a remedy for a disposition by the husband in fraud of her rights, or made with the intent and purpose of defeating her interest. And further, this power of the husband to dispose of the personal property of the community is limited to the period of coverture, and does not extend to his disposal thereof by will, but he is restricted in the disposal by will to his one-half thereof.

Mr. Reeves in his most excellent and scholarly work attributes this species of ownership of property by husband and wife as having its origin in the French and Spanish control of some of the southern and western states of this country. Designated as the "community system of matrimonial gains," founded chiefly on common-law principles, it has been molded to some extent by statutes and common-law rules, having, as its basal idea, the united ownership of husband and wife, and the benefit to them of property acquired by either or both of them during the coverture. Reeves on Real Property, sec. 691.

From its nature and origin this particular estate arising during the existence of the marriage relation may not be defined with such precision as will comprehend all of its phases, but in its devolution and descent this species of ownership bears a striking resemblance to two kinds of estates, that of an estate or tenancy by the entirety and a tenancy in common. Upon a dissolution of the marriage relation by death, if there be no child or children of the deceased, all of the property belonging to the community estate of the husband and wife goes to the survivor. In this aspect of the community relationship, the husband and wife may be considered as one, owning the property during the existence of the marriage with the unities of time, title, and interest and possession present, and at the death of one the survivor takes all.

So, in tenancy by the entirety, each one may be regarded as owning all the property with the unities of person, time, title, interest, and possession with a survivorship. A conveyance of real and personal property to a husband and his wife makes them owners by the entirety at common law. They are not seised as joint tenants *per tout et per my,* but by the entirety *per tout et non per my.*

But under the statute also, if the deceased have a child or children, the survivor is entitled to his or her one-half of the property, and the other half passes to the child or children of the deceased. In this latter feature of the statute there is no right of survivorship, and, except that of possession, the unities are lacking, thus resembling a tenancy in common.

"If a terse summary of the aims and results of community ownership be attempted, it may be said that the object of the system is to make a beneficial cotenancy between husband and

wife, of such property as either or both may acquire, otherwise than by gift or exchange for 'separate property,' during the coverture, and that such ownership, practically indissoluble during the existence of the marriage, generally involves the right of survivorship when the first owner who dies leaves no descendant, but otherwise resembles a tenancy in common." Reeves on Real Property, sec. 691, p. 982.

That the interest of the wife in the community property during the coverture is not a mere possibility—not the expectancy of an heir—is quite apparent. The old saying is not true that community is a partnership which begins only at its end. Upon the dissolution of the community by death, the wife does not inherit her share of the common property, but with the death of the husband the management and control of the statutory agent or trustee ceases. The wife acquires not her share for that was already hers, but in addition to her share she acquires the right of management, control, and disposition of that share. Her status being thereby fixed as that of a *feme sole*. If there be no child or children of the deceased husband, all of the common property goes to the surviving wife. She has her share in the property, and in addition, by right of survivorship and not as an heir, she acquires the share that belonged to the husband, and she takes all of the property in her own right, and with respect to the management, control, and disposition of such property is reduced to the status of a *feme sole* and must thenceforward with respect to it act for herself. That the interest of the wife in the community property during the coverture is more substantial than that of an heir's expectancy, see *Warburton* v. *White*, 176 U. S. 484, 44 L. Ed. 555, 20 Sup. Ct. Rep. 404; *Arnett* v. *Reade*, 220 U. S. 311, 55 L. Ed. 477, 31 Sup. Ct. Rep. 425, 36 L. R. A., N. S., 1040; *Kohny* v. *Dunbar*, 21 Idaho, 258, Ann. Cas. 1913D, 492, 39 L. R. A., N. S., 1107, 121 Pac. 544.

Passing to the will, no citation to authorities is necessary to show that it is to be construed according to the intention of the testator. Such a canon of construction is elementary. It is "Rock-ribbed and ancient as the sun." We shall look at some of the rules of interpretation governing the construction of a will when the doctrine of election is contended for because the widow receives benefits by her husband's will.

There are some particular rules belonging to this branch of the subject which we shall notice.

"While parol evidence is admissible, to the same extent as in other cases, in aid of the construction of written instru ments—that is, to show the condition of the subject matter, and the surrounding circumstances, so far as to place the court in the position of the testator—yet the intent of the testator to dispose of that which was not his must appear from the words of the will itself, and cannot be proved by evidence *dehors* the instrument." *Herrick* v. *Miller,* 69 Wash. 456, 125 Pac. 974.   Such extrinsic evidence is admissible for the purpose of placing the court in the shoes of the donor, but such evidence can go no further.   Pomeroy's Equity Jurisprudence, sec. 473.

"If a testator owning an undivided share uses language of description and donation which may apply to and include the whole property, and by the same words gives benefits to his co-owner, the question arises whether such co-owner is bound to elect between the benefits conferred by the will and his own share of the property.   *Prima facie* a testator is presumed to have intended to bequeath that alone which he owned—that only over which his power of disposal extended, wherever, therefore, the testator does not give the property *specifically,* but employs *general words* of description and donation, such as 'all my lands,' and the like, it is well settled that no case for an election arises, because there is an interest belonging to the testator to which the disposing language can apply, and the *prima facie* presumption as to his interest will control."   Pomeroy's Equity Jurisprudence, 3d ed., sec. 489.

". . . Where the testator has a partial interest in the property devised or bequeathed by his will, the necessity of an election is always much less apparent than where he purports to bestow property in which he has no interest whatever.   In such cases it is a settled rule that courts will lean as far as possible in favor of an interpretation which shows an intention of the testator to give only the interest, estate, or share which he is enabled, by virtue of his own right to deal with, or to give the property in its present condition, subject to all existing encumbrances and charges upon it.   It requires a

strong and unequivocal expression or indication of an intent on the part of the testator to bestow the entire property, and not simply his own interest in it, or to bestow the property freed from its encumbrances and charges, in order to raise the necessity of an election.'' Pomeroy's Equity Jurisprudence, sec. 488.

''. . . The doctrine of election is not applicable to cases where the testator, erroneously thinking certain property is his own, gives it to a donee to whom in fact it belongs, and also gives him other property which is really the testator's own; for in such case the testator intends that the devisee shall have both, though he is mistaken as to his own title to one. . . . '' Pomeroy's Equity Jurisprudence, sec. 475.

Again, at section 505, Mr. Pomeroy clearly states the rule which should govern in such cases. He says: ''It cannot be said that the courts have settled any special rules applicable to particular forms of devise or bequest by the husband, but the general rule for the determination of all cases they have established in a very clear and certain manner. Whenever a husband has made some testamentary provision for his wife, and has also assumed to dispose of more than his own half of the community property, in order that she shall be put to her election the testamentary provision in her behalf must either be declared in express terms to be given to her in lieu of her own proprietary right and interest in the community property, or else an intention on his part that it shall be in lieu of such proprietary right must be deduced by clear and manifest implication from the will, founded upon the fact that the claim to her share of the community property would be inconsistent with the will, or so repugnant to its disposition as to disturb and defeat them. An intent of the husband to dispose of his wife's share of the community property by his will, and thus to put her to an election, will not be readily inferred where the words of the gift may have their fair and natural import by applying them only to the one-half of the community property which he has the power to dispose of by will.''

Chancellor KENT, in *Adsit* v. *Adsit*, 2 Johns. Ch. (N. Y.) 448, 7 Am. Dec. 539, reviews the cases dealing with the widow's right of dower, and says that, to enable the court to deduce an intention that a testamentary gift to the widow should

be in lieu of dower, the claim of the dower must be incon-
sistent with the will and repugnant to its dispositions or some
of them; it must, in fact, disturb or disappoint the will.
See, also, *Beard* v. *Knox,* 5 Cal. 252, 63 Am. Dec. 125; *Payne*
v. *Payne,* 18 Cal. 292; *Silvey's Estate,* 42 Cal. 210; *King* v.
*Lagrange,* 50 Cal. 328; *Frey's Estate,* 52 Cal. 658.

More recent California cases fully sustain the earlier deci-
sions to the effect that a devise or bequest of ''all the prop-
erty of which I may die possessed,'' or of ''all my property,''
will not create the necessity for an election. *Estate of Gwin,*
77 Cal. 319, 19 Pac. 527; *Estate of Gilmore,* 81 Cal. 240, 22
Pac. 655.

The testator must be presumed not to have intended to de-
vise any property over which he had no power of testa-
mentary disposition, and his will should be read as applying
only to his property within such power. *King* v. *Lagrange,*
50 Cal. 332. In the *Estate of Silvey,* 42 Cal. 212, the court
announce this rule: ''The devise must be read as applying
only to that moiety which was within his testamentary power.
A purpose to attempt the disposition, by will, of property,
which by statute, would pass to the wife, as survivor of the
matrimonial community immediately upon his death, is not
to be readily inferred, especially where, as here, the words
employed by the testator may have their fair and natural
import, by applying them only to that moiety of which he
had by law the testamentary disposition.'' See, also, *Herrick*
v. *Miller, supra,* a well-considered case in which many of the
authorities are reviewed.

Applying to the will of the deceased the rules of construc-
tion which we have noticed, it is not difficult to discover that
the language used by the testator does not present a case
where an election is necessary. Regarding the aptitude of
the testamentary limitations to the testator's interest, the lan-
guage used manifests no intention upon the part of the testator
to dispose of his wife's community interest, and make a tes-
tamentary provision for her in lieu of such interest. In view
of the wife's proprietary interest in the property being a
vested right, and imputing to the testator a knowledge of
the law with respect to such interest, with an indulgence also
in the presumption that the testator had in mind and was
dealing with his own interest over which he had the power

of disposition by will, we see that by the language of his will the testator does not give the whole of the community property specifically. He does not describe and define the whole *corpus* of the thing in which his partial interest exists as a distinct and identified piece of property, but, his proprietary right or share being limited to an undivided one-half thereof, he employs the most general words of description and donation. He says: "I give, devise and bequeath unto my beloved wife Rose Ann La Tourette, of Phoenix, Arizona, all of the property of which I may die possessed, of any and every nature, and wheresoever situate, whether the same be real, personal or mixed, to have, hold, use and enjoy the same, for the purpose of yielding to her a good, comfortable and certain and satisfactory living during her natural life, and I desire and direct, that after her death *all of said property of which she is then possessed* shall go to our surviving children, and to the issue of those who may be dead, to the extent of the share which would have gone to the deceased parent, if alive, share and share alike."

When the will was executed the husband and wife were both in possession of the community property with an equal interest therein, though, as the statutory agent or trustee of the community, the husband had power of disposition over the personalty. He does not express any intention to make the donation in lieu of the wife's proprietary right. Her claim to this proprietary right in the community property is in no wise inconsistent with the provisions of the will or repugnant to its dispositions. So no necessary antagonism arises. The enjoyment of her proprietary right is entirely compatible with the enjoyment by her of her husband's donation, and hence no necessity for an election on the part of the widow is created.

Appellants contend that there was not only a necessity for an election, but that the widow by her conduct has made an election to take under the will by her long acquiescence in its provisions, and by not declaring her election to retain her proprietary right in the community property, and so is estopped from urging that her title to the interest in the community property was not devised by the will. But we have seen that a retention of her interest in the property, under the law is not inconsistent with her acceptance of the bene-

fits conferred by the will. She could take her share in the community property, and could also take her life estate, under the testator's will, without disturbing in the least the testator's disposition. As between the widow and the beneficiaries under the will, it is quite clear that she is not concluded by reason of an equitable estoppel.

Even if the widow had formally made an election under the supposition that such a duty devolved upon her by the law, when no necessity for an election by her had been created, the supposed election is ineffectual. *Estate of Wickersham,* 138 Cal. 355, 70 Pac. 1076, 71 Pac. 437; *Pratt* v. *Douglas,* 38 N. J. Eq. 516; *In re Smith,* 108 Cal. 115, 40 Pac. 1037; *King* v. *Lagrange,* 50 Cal. 328. In the last case cited the testator owning land, all of which was community property, devised it all to his wife, with a power of sale, however, given to the executor, which, in its legal effect, was confined to the one-half of the real estate capable of being disposed of by the testator. The executor, in ignorance of the law concerning community property, sold all the land devised, by virtue of his power; the purchaser, in like ignorance, supposed he was buying the entire estate, and the widow, in like ignorance, received the purchase money for the whole. *Held,* that the widow was not thereby precluded from setting up and enforcing a claim to the half of the land which, as community property, belonged to her of her own right, and that the will did not present a case for an election.

Comparing the provisions of the will before us with those found in the cases cited by appellants, a very marked difference is at once discerned. As, for instance, in the *Estate of Vogt,* 154 Cal. 508, 98 Pac. 265, the testator dealt with his separate property and the whole of the community property. He gave certain real property to the widow, specifically describing it, and which was the separate property of the testator; the widow being his second wife by whom he had no children. All the residue of his estate and the whole thereof he bequeathed to his wife and children in equal parts, to each an undivided one-fifth share thereof. He described the property as "the rest and residue of my estate, real, personal and mixed, wheresoever situated," and he gave "the whole thereof" to his wife and children in equal shares. He declared *"all of my estate is my separate property* except a por-

tion thereof equal to a value of eight thousand dollars . . . only eight thousand dollars of *my estate* is community property.'' And otherwise, by the language used, made it appear that *his estate* embraced both his separate property and the entire interest in the community property, evincing a clear intent to dispose of the whole and not of a moiety thereof. The court said that under such a will the widow could not take the moiety given her by the law without defeating the dispositions made by the testator, and therefore an election was necessary.

Finally, it is urged that the court below should have required the widow to give security for the proper holding and distribution of the personal property coming into her hands under the will. No testamentary trust was attempted to be created by the will. The testator gives all of the property of which *"I may die possessed"* to the widow ''to have, hold, use and enjoy the same, for the purpose of yielding to her a good, comfortable, and certain and satisfactory living during her natural life,'' and then directs that after her death *"all of said property of which she is then possessed"* shall go to their children and to the issue of those who may be dead. He empowers his executors to sell and dispose of any or all of the property upon the consent and approval of his wife, without notice, and without the consent or approval of any court. The testator says: ''It being my wish, desire and intention to provide, beyond doubt, and to her satisfaction, *a living and money to satisfy the desires of my beloved wife during her natural life*, I hereby direct and order that my said executors shall at all times first see and attend to that, and if necessary, to sell and dispose of any of the said property for the said purpose.'' Beyond all else, the comfort of his life's companion and the gratification of his wife's desires in her declining years was the thought uppermost in his mind. It is the clear distinct chord sounded in the will. Manifestly, it was his intention that she should have the use of the property, and, if her comforts or desires dictated it, the right to consume the *corpus* of the property. The testator's wishes must be respected. Appellants urge that, while there is a conflict in the authorities upon the question, the better line of authority is that it is within the discretion of the court to require or not to require the giving of such

security.   Conceding that it was discretionary, we find in the
refusal of the court to require security no abuse of such
discretion.

The lower court took jurisdiction of the whole of the com-
munity estate, and, after paying the debts against it and the
expenses of administration, distributed the residue.   In every
case the community estate passes with the debts against it..
It was not improper for the court to assume such jurisdiction
of the community estate in order to determine the amount of
the charges or debts thereon and direct their payment out of
the property.   Even if the decree of distribution added noth-
ing to the strength of the widow's title to an undivided one-
half of the property vested in her by law, it did definitely
and finally determine the amount or extent of such interest
freed from community obligations or debts.   And it is imma-
terial whether it be denominated a decree of distribution or a
judgment or order fixing the amount or extent of her interest
in the community estate free of community charges or debts,
and which she is entitled to demand and receive from the
executor, the desired end is accomplished.

Putting into the melting pot what we have said, its refine-
ment is this and nothing more, no reversible error, and the
decree or order appealed from stands affirmed.

CUNNINGHAM and ROSS, JJ., concur.