[Civil No. 3537.   Filed April 22, 1935.]

[43 Pac. (2d) 1011.]

BURTON E. BLACKMAN and MARY BLACKMAN, His Wife, and FRANK E. BLACKMAN and MELBA BLACKMAN, His Wife, Appellants, v. ELLEN A. BLACKMAN, Appellee.

Messrs. Cunningham, Carson & Gibbons, for Appellants.

Mr. Frank H. Lyman, for Appellee.

LOCKWOOD, C. J.—Ellen A. Blackman, hereinafter called plaintiff, brought suit against Burton E. Blackman and Mary Blackman, his wife, and Frank E. Blackman and Melba Blackman, his wife, hereinafter called defendants, to quiet title to lots 10 and 12 of block A of Leeper-Brown Place. The action was tried to the court without a jury and judgment was rendered in favor of plaintiff, and from such judgment defendants have appealed.

The evidence material to a determination of the issues involved on the appeal, taken as strongly

as possible in favor of plaintiff, as under our rule it must be, shows the following facts: L. S. Blackman, hereinafter called decedent, died testate in Maricopa county on the 7th day of May, 1932, leaving surviving him plaintiff, to whom he had been married in 1919, and two sons by a former marriage, Burton E. Blackman and Frank E. Blackman, defendants herein. At the time of decedent's marriage to plaintiff each of them owned certain property which was admittedly separate estate. Among decedent's property was ten acres of land in what was known as Orange Heights or Orangewood. After his marriage to plaintiff they occupied this land as a family home, placing thereon improvements which cost something over $1,000. The money for these improvements was furnished by plaintiff. In 1928 this land was sold for the sum of $12,500, and by 1929 a total of $6,000 thereof had been paid. In the year last named they bought lots 10 and 12, above described. The entire purchase price of lot 10 and $1,000 of the purchase price of lot 12 was paid from the proceeds of the Orange Heights land, there being a mortgage of $1,500, the payment of which was assumed by plaintiff and decedent, and a deferred payment of $800 left outstanding at the time of the purchase as against lot 12. This latter $800 was eventually paid in part by decedent and part by plaintiff, and $500 had been paid upon the principal of the mortgage by plaintiff at the time of suit, the remainder of $1,000 still standing against the property. If nothing further had appeared there could have been no question that so far as lot 10 was concerned, being purchased with the proceeds of the separate property of decedent, it was his separate property at the time of his death, subject perhaps to a charge for the value of any improvements paid for by plaintiff's separate funds,

and that the decedent and the plaintiff were tenants in common of lot 12, their interests being proportionate to the amount of the purchase price paid from their separate estates. *Horton* v. *Horton,* 35 Ariz. 378, 278 Pac. 370. In such case, of course, plaintiff was not entitled to a decree quieting the titles to either of the lots in her, for they would pass according to the law of descent and distribution, and since decedent left surviving him two sons of his first marriage they inherited an interest in the property, unless their father had by will disposed of it otherwise. This is not disputed by plaintiff, and she bases her claim that she is the owner of the two lots in question solely on the form of the deeds conveying the title and certain provisions of our statutes. The deeds to the property, so far as material to the consideration of this case, read as follows:

"KNOW ALL MEN BY THESE PRESENTS: That Edgar McClothlin and Pearl McClothlin, his wife, of the County of Maricopa, State of Arizona, for and in consideration of Ten Dollars, to them in hand paid by L. S. Blackman and Ellen A. Blackman, his wife, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said L. S. Blackman and Ellen A. Blackman all that certain premises situate in Maricopa County, State of Arizona, as follows, to wit:

"Lot Ten (10), Block 'A,' LEEPER–BROWN PLACE, an Addition to the City of Phoenix, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, in Book 15 of Maps, page 1 thereof.

"To have and to hold the above-described premises together with all and singular the rights and appurtenances thereto in anywise belonging unto the said L. S. Blackman and Ella A. Blackman, their heirs and assigns forever.

"And we hereby bind ourselves, our heirs, executors and administrators, to warrant and forever de-

fend, all and singular, the premises unto the said L. S. Blackman and Ellen A. Blackman, their heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof."

"KNOW ALL MEN BY THESE PRESENTS:

"That Cowley, Higgins and Delph Investment Company, an Arizona corporation, of the County of Maricopa, State of Arizona, Grantor herein, for and in consideration of the sum of Ten and no/100 Dollars to it in hand paid by ELLEN A. BLACKMAN and L. S. BLACKMAN, her husband, Grantees herein, has granted, sold and conveyed and by these presents does grant, sell and convey unto the said Grantees all that certain real property situate in the County of Maricopa, State of Arizona, described as follows:

"Lot Twelve in Block 'A' of LEEPER–BROWN PLACE, an addition to the City of Phoenix, according to the map or plat of said addition of record in the office of the County Recorder of Maricopa County, Arizona, in Book 15 of Maps, page 1 thereof.

"Subject to building and other restrictive covenants as set forth in that certain Deed recorded in the office of the County Recorder of Maricopa County, Arizona, in Book 94 of Deeds, page 372 thereof.

"To have and to hold the above described property, together with all and singular the rights and appurtenances thereto in any wise belonging unto the said Grantees, their heirs and assigns forever. And the Grantors hereby bind themselves, their heirs, executors and administrators to warrant and defend, all and singular the said property unto the said Grantees, their heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof. . . . ''

It was the contention of plaintiff in the lower court that these conveyances created a joint tenancy in decedent and herself, with right of survivorship, by virtue of section 2777, Revised Code of 1928, which reads as follows:

"Estates in common; joint tenancies. All grants and devises of real property made to two or more

persons create estates in common and not in joint tenancy, except grants or devises in trust or to executors or to husband and wife. A grant or devise to two or more persons may, however, by express words, vest the estate in the survivor upon the death of a grantee or devisee.''

This section first came into our law as sections 4708 and 4709, Civil Code 1913, which read as follows:

''4708. All grants and devises of land made to two or· more persons, except as provided in the following section, shall be construed to create estates in common, and not in joint tenancy, unless expressly declared to be in joint tenancy.

''4709. The preceding section shall not apply to mortgages, nor to devises, or grants made in trust, or made to executors, or to husband and wife.''

The sections were copied from the Wisconsin Code at the time our Code of 1913 was adopted. It is urged by plaintiff that the effect of section 2777, *supra,* was such that when a conveyance was made to husband and wife jointly, they took the realty as joint tenants, with the right of survivorship in either case. It is the position of defendants that a conveyance of this nature is *prima facie* evidence that the property was community estate subject, however, to proof that it was separate in character.

A proper decision of the question involved, we think, requires a brief review of our law in regard to the property rights of husband and wife. Under the common law when a man and woman intermarried, all the property, both real and personal, which he had at the time of marriage remained his separate property and subject to his sole disposition, without the necessity of obtaining her consent, except in so far as the realty was affected by her dower rights. The property owned by the woman before marriage took a different status. The husband had a vested inter-

est therein, its nature depending upon the character of the property and the estate held by the wife. He was entitled to the rents, issues and profits of her realty, and to an absolute interest in all the personalty in possession, unlimited and unrestricted, together with the right to reduce to possession any choses in action which she might possess. Practically the only restriction on his absolute right over her separate realty was that he could not dispose of or encumber it so as to affect her or her heirs' interest in the land *after his death*. Any personal property acquired during coverture by the exertions of either husband or wife, or from the rents, issues and profits of the estate of either one, was the husband's separate property, and at his absolute disposition, either by grant or by will. Such was also true of real estate bought during coverture when the title was taken in the name of the husband.

But where a conveyance or devise of land to husband and wife together was made during coverture the situation was very different. They then became tenants by the entirety, an estate peculiar to the common law and to the relationship of husband and wife. Such was the marital property law which our English ancestors brought to this country, and such it continues to be in almost all the states of the Union, except as it has been changed by statute. In practically all of these states which have adopted the common law it has been greatly liberalized during recent years, but except where the legislative authority has made such modification, the old principles of the common law are still applied in practically their full force.

However, a small group of states situated in the southwestern part of the country have from their first settlement adopted an entirely different

system of marital property rights. This system, although varying in detail in the different states affected, agrees in its fundamentals and is generally referred to as the law of community property. In the original Howell Code of 1864 the common-law rule of marital property rights, somewhat liberalized, was adopted, but this rule was in effect abolished and the community property system was established by the act of December 30, 1865, the vital parts of such statute reading as follows:

"Section 1. All property, both real and personal, of the wife owned by her before marriage, and that acquired afterward by gift, bequest, devise or descent, shall be her separate property, and all property, both real and personal, owned by the husband before marriage, and that acquired by him afterward, by gift, bequest, devise or descent, shall be his separate property.

"Sec. 2. All property acquired after the marriage by either husband or wife, except such as may be acquired by gift, bequest, devise or descent, shall be common property. . . .

"Sec. 9. The husband shall have the entire management and control of the common property, with the like absolute power of disposition as to his own separate estate; and the rents and profits of the separate estate of either husband or wife shall be deemed common property, unless in the case of the separate property of the wife it shall be provided by the terms of the instrument whereby such property may have been bequeathed, devised or given to her, that the rents and profits thereof shall be applied to her sole and separate use, in which case the entire management and disposal of the rents and profits of such property shall belong to the wife, and shall not be liable for the debts of the husband.

"Sec. 10. No estate shall be allowed the husband as tenant by courtesy upon decease of his wife, nor any estate in dower be allowed to the wife upon the decease of her husband.

"Sec. 11. Upon the dissolution of the community by the death of either husband or wife, one-half of the common property shall go to the survivor, and the other half to the descendants of the deceased husband or wife, subject to the payments of the debts of the deceased. If there be no descendants of the deceased husband or wife, the whole shall go to the the survivor, subject to such payment."

In 1887 these provisions as to property rights were somewhat changed, particularly in regard to the rents and profits of the separate estate of the wife:

"2100. All property both real and personal of the husband owned or claimed by him before marriage and that acquired afterward, by gift, devise, or descent as also the increase, rents, issues, and profits of the same, shall be his separate property, and all property both real and personal of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, as also the increase, rents, issues and profits of the same, shall be her separate property.

"2101. The earning and accumulations of the wife and of her minor children in her custody while she has lived or may live separate and apart from her husband, shall also be the separate property of the wife.

"2102. All property acquired by either husband or wife, during the marriage, except that which is acquired by gift, devise or descent, or earned by the wife and her minor children, while she has lived or may live separate and apart from her husband, shall be deemed the common property of the husband and wife, and during the coverture may be disposed of by the husband only.

"2103. Married women of the age of twenty-one years and upwards, shall have the sole and exclusive control of their separate property, and the same shall not be. liable for the debts, obligations or engagements of the husband, and may be contracted, sold, transferred, mortgaged, conveyed, devised or

bequeathed by them in the same manner and with like effect as if they were unmarried."

And the provision regarding the disposition of the community estate after the death of either spouse was transferred to the chapter governing descent and distribution generally. In 1901 the Arizona laws were again codified and substantially the same provisions adopted as in the Code of 1887, except that the husband was denied the right of disposing of or encumbering the community realty without the consent of the wife. The Codes of 1913 and 1928 made very few changes in the law, so far as the rights of the parties during their lifetime were concerned, but in the chapter on descent and distribution expressly gave either spouse testamentary authority over his or her moiety of the community.

Our courts have had frequent occasion to construe these various statutes, but the first case which discussed the community law of Arizona as a whole, and laid down the fundamental principles which have since been followed, is *La Tourette* v. *La Tourette*, 15 Ariz. 200, 137 Pac. 426, Ann. Cas. 1915B 70. Therein we say:

"Mr. Reeves in his most excellent and scholarly work attributed this species of ownership of property by husband and wife as having its origin in the French and Spanish control of some of the southern and western states of this country. Designated as the 'community system of matrimonial gains,' founded chiefly on common-law principles, it has been molded to some extent by statutes and common-law rules, having, as its basal idea, the united ownership of husband and wife, and the benefit to them of property acquired by *either or both of them* during the coverture. Reeves on Real Property, § 691.

"From its nature and origin this particular estate arising during the existence of the marriage relation may not be defined with such precision as will com-

prehend all of its phases, but in its devolution and descent this species of ownership bears a striking resemblance to two kinds of estates, that of an estate or tenancy by the entirety and a tenancy in common. Upon a dissolution of the marriage relation by death, if there be no child or children of the deceased, all of the property belonging to the community estate of the husband and wife goes to the survivor. In this aspect of the community relationship, the husband and wife may be considered as one, owning the property during the existence of the marriage with the unities of time, title, and interest and possession present, and at the death of one the survivor takes all.

"So, in tenancy by the entirety, each one may be regarded as owning all the property with the unities of person, time, title, interest, and possession with a survivorship. A conveyance of real and personal property to a husband and his wife makes them owners by the entirety at common law. They are not seized as joint tenants *per tout et per my,* but by the entirety *per tout et non per my.*

"But under the statute also, if the deceased have a child or children, the survivor is entitled to his or her one-half of the property, and the other half passes to the child or children of the deceased. In this latter feature of the statute there is no right of survivorship, and, except that of possession, the unities are lacking, thus resembling a tenancy in common.

" 'If a terse summary of the aims and results of community ownership be attempted, it may be said that the object of the system is to make a beneficial cotenancy between husband and wife, of such property as *either or both may acquire,* otherwise than by gift or exchange for "separate property," during the coverture, and that such ownership, practically indissoluble during the existence of this marriage, generally involves the right of the survivorship when the first owner who dies *leaves no descendant,* but otherwise resembles a tenancy in common.' Reeves on Real Property, § 691, p. 972." (Italics ours.)

But while community estate has certain similarities to certain estates known to the common law, it is

after all *sui generis* and a matter of statute, and it is not regulated by the principles of that law, and we are of the opinion that our language in the case of *La Tourette* v. *La Tourette, supra,* where we stated, in discussing the interest of the wife in the community property,

" . . . She has her share in the property, and in addition, by right of survivorship and not as an heir, she acquires the share that belonged to her husband, . . . "

was not well chosen, for it may perhaps convey the idea that the right of survivorship referred to therein is the same as that which under the common law existed in estates by the entirety or joint tenancies. While it is true that the surviving spouse takes his or her half of the property directly, and in case there are no descendants of the other spouse, also takes the interest of the other spouse in the community estate, yet the "survivorship" mentioned in the statute and discussed in the La Tourette case, *supra,* is not the survivorship found under the common law in estates by the entirety or joint tenancy. In estates by the entirety neither spouse could *by will or deed* defeat the right of survivorship in the estate so held. In community property the interest of each spouse is subject to testamentary disposition. In joint tenancies either joint tenant could *by deed* dispose of his interest and defeat the right of survivorship. This cannot be done with the community realty. The right of the surviving spouse to take the interest of the decedent under the community property system lacks the vital characteristics of the right of survivorship found in the old common-law estates. As a matter of fact, that right under our law is one given solely by the statutory law of descent and distribution and not by any of the peculiar doc-

trines of the common law. Section 11, Act December 30, 1865; Section 1467, Civil Code, 1887; Section 2124, Civil Code 1901; Section 1100, Civil Code 1913; Section 985, Rev. Code 1928. That this was the intention of our legislatures is shown, we think, by the facts (a) that the interest of the deceased spouse is subject to his testamentary disposition, and (b) that it never passed to the surviving spouse except where there were no descendants of the deceased one.

■■■ We have repeatedly had occasion to discuss the various incidents necessarily arising during and from the creating an estate of the nature of the community one, and have held consistently that if during the coverture property is acquired, it is presumably community estate, and that it makes no difference whether the legal title is taken in the name of either one or of both spouses. *La Tourette* v. *La Tourette, supra; Horton* v. *Horton, supra; Malich* v. *Malich,* 23 Ariz. 423, 204 Pac. 1020; *Rundle* v. *Winters,* 38 Ariz. 239, 298 Pac. 929. Estates have been settled and conveyances have been made for nearly a generation upon the strength of these decisions and innumerable vested rights have accrued thereunder. All of the decisions quoted, which are utterly inconsistent with plaintiff's construction of section 2777, *supra,* were made after that section first appeared in our law, and our legislature, notwithstanding it has had frequent opportunities to do so, has made no effort to amend the section so it would clearly indicate an intention on the part of that body to adopt plaintiff's theory of its meaning. It would require the clearest and most unequivocal declaration of such an intent to convince us that the legislature in 1913 intended to create, as between husband and wife and by mere implication, an estate which was originally a common-law one, which under that law was never in-

'tended to apply to estates created by a conveyance to both husband and wife, and which is repugnant to the fundamental principles of our long-established system of community property.

As was said by Justice McALISTER in *Schofield* v. *Gold,* 26 Ariz. 296, 225 Pac. 71, 37 A. L. R. 275:

"The decisions of this court having sanctioned such conveyances, and the people and bar of the state having relied upon these holdings, notwith-standing they were made in cases in which the validity of such deeds was not discussed but rather accepted and recognized as a fact, it should not now be held that the court was wrong in pronouncing them valid when to do so would undoubtedly result in disturbing many titles, and thus cause injustice to a number of people, a condition that should never be permitted unless the law is such as to leave the court no alternative."

We therefore hold that it was not the intent of the legislature, by accepting conveyances to husband and wife from the provisions of section 2777, *supra,* to create a joint tenancy as between them but that the exception was meant solely to negative the idea that such conveyances should create an estate in common between the spouses. Such being the true intent of the exception, conveyances to the spouses together which contained no specific conditions to the contrary would according to the repeated acts of the legislature and the decisions of this court presumably create a community estate. For the foregoing reasons, after the death of L. S. Blackman plaintiff did not own lots 10 and 12, *supra,* as her separate estate through survivorship under the law of joint tenancy and, such being the case, was not entitled to have title thereto quieted in her.

The judgment of the superior court of Maricopa county is reversed and the case remanded for fur-

ther proceedings in accordance with the opinions expressed herein.

McALISTER and ROSS, JJ., concur.