[Civil No. 4046. Filed March 27, 1939.]
[88 Pac. (2d) 533.]

LINCOLN FIRE INSURANCE COMPANY OF NEW YORK, a Corporation, Appellant, v. J. C. BARNES and RUBY C. BARNES, Husband and Wife, STANDARD INVESTMENT COMPANY, a Corporation, and CHARLES HARRIS, Appellees.

Messrs. Snell & Strouss and Mr. Mark Wilmer, for Appellant.

Messrs. Cunningham & Carson, for Appellees J. C. Barnes, Ruby C. Barnes and Standard Investment Company.

Messrs. Gust, Rosenfeld, Divelbess, Robinette & Coolidge, for Appellee Charles Harris.

LOCKWOOD, J.—This is an appeal by the Lincoln Fire Insurance Company of New York, a corporation, hereinafter called plaintiff, from a declaratory judgment which held that a lease of certain real property in the City of Phoenix was the sole and separate property of Ruby C. Barnes, and that her husband, J. C. Barnes, and the community, consisting of Ruby C. Barnes and J. C. Barnes, had no interest therein.

The only question necessary for us to consider is whether the evidence sustains the finding of the trial court that the lease in question was the sole and separate property of Ruby C. Barnes. This evidence shows the following facts: J. C. and Ruby C. Barnes were married on the 14th day of May, 1919, and ever since have been husband and wife. At that time he had been engaged in the insurance business in Nogales for some three or four months, his assets being a very small equity in this business and two $50 Liberty Bonds. His wife at the time of the marriage possessed between $12,000 and $15,000 as her separate estate which she had acquired from her father. In 1925 one Dumazert offered Barnes a commission of $1,000 if he would sell certain valuable real estate in Nogales belonging to Dumazert. As a result of this offer Dumazert and Barnes entered into a contract for the sale of the property to the latter for $75,000, $1,000 in cash and the balance in deferred payments. About a year later Barnes assigned his interest in the property to his wife as a gift. At this time the plaintiff was in no manner a creditor of either of the Barnes.

In the spring of 1931 Mrs. Barnes sold her equity in the Dumazert property for $28,000 and her interest in the Citizens Investment Company of Nogales, which was also her separate property, for $17,500 and in the fall of that year she purchased the lease on the

San Carlos Hotel in Phoenix, which is the subject matter of this suit, together with certain furniture and fixtures in the hotel, from Charles Harris. The purchase price for the lease and furniture was $185,000, $45,000 being paid in cash and the balance evidenced by a note secured by a chattel mortgage. This lease was originally for twenty-five years and still had twenty years to run. The $45,000 cash paid for the lease came entirely from the proceeds of the sale of the equity in the Dumazert building and the stock in the Citizens Investment Company of Nogales, both of which, as we have stated, were the separate property of Mrs. Barnes at the time.

The Barnes operated the hotel business for approximately six years. During this time Barnes was paid a salary of from $100 to $150 per month as manager of the hotel, while Mrs. Barnes had a drawing account of about $300 per month. Mrs. Barnes devoted practically her entire time to assisting in managing the hotel, with the exception of a period of some six or seven months when she was ill, and Mr. Barnes devoted part of his time to the management of the hotel and part to the operation of an independent garage.

From 1931 to 1937 there was paid to Harris on the mortgage for the balance of the purchase price above referred to nearly $100,000, all of which came out of the earnings of the hotel business operated by the Barnes under their lease as aforesaid. In November, 1937, Harris repurchased the lease and furniture for $100,000, $40,600 of which was paid by the satisfaction of the note and mortgage, which were originally given by Mrs. Barnes at the time of the purchase of the lease in 1931, and the balance of $59,400 in cash. These are all the material facts bearing upon the question of whether the lease was community property of J. C. and Ruby C. Barnes, as claimed by plaintiff, or

the separate property of Ruby C. Barnes, as found by the trial court.

We have frequently had occasion to review various phases of the law determining whether property acquired by residents of the state of Arizona is community or separate, and have laid down the rules governing such situations as follows: (a) All property acquired by either spouse during coverture, except through gift, devise or descent, is presumed community property of the two, no matter in whose name the title may stand. *Horton* v. *Horton*, 35 Ariz. 378, 278 Pac. 370; *Blackman* v. *Blackman*, 45 Ariz. 374, 43 Pac. (2d) 1011; *La Tourette* v. *La Tourette*, 15 Ariz. 200, 137 Pac. 426, Ann. Cas. 1915B 70. (b) This presumption may be overcome by proof that it was the intention of the spouses at the time of acquisition that the property should be the separate property of one or the other. *Jones* v. *Rigdon*, 32 Ariz. 286, 257 Pac. 639. (c) Either spouse may give his interest in community to the other after the property has been acquired, so long as the rights of creditors are not affected by such gift. *Colvin* v. *Fagg*, 30 Ariz. 501, 249 Pac. 70. And (d) that the burden is upon the one claiming the property acquired during coverture to be separate property to establish such fact by clear and satisfactory evidence. *Rundle* v. *Winters*, 38 Ariz. 239, 298 Pac. 929.

At the time of the marriage there is no question that Ruby C. Barnes owned as her separate estate property worth $12,000 or $15,000, while her husband owned little, if anything. There was equally no question that through the investment of her personal funds she acquired an interest in the Citizens Investment Company of Nogales, which was sold in 1931 for $17,500, and this money being the ultimate proceeds of her separate estate continued to hold the same

character. *Rundle* v. *Winters, supra;* section 2173, Rev. Code 1928. It is also evident that about 1925 J. C. Barnes acquired as community, and not as separate property, an equity in the Dumazert property in Nogales. This property had its status fixed at the time of its acquisition as community property, but it is equally undisputed that at a time when plaintiff was in no manner a creditor of either of the Barnes, J. C. Barnes made a gift to Ruby C. Barnes of his equity in the Dumazert property. This, under the law, he had the right to do. *Colvin* v. *Fagg, supra.*

██ In 1931 the equity in the Dumazert property which at that time, so far at least as plaintiff was concerned, was her sole and separate property was sold for $28,000 which cash necessarily held its status as separate property. *Rundle* v. *Winters, supra.* When the lease on the San Carlos Hotel was purchased by her, all of the cash which was paid on the purchase was her separate property and the lease, therefore, necessarily took the same status, for property takes its status as community or separate in nature at the time it is acquired. *Horton* v. *Horton, supra.* But, says plaintiff, even admitting this to be true, the community estate paid on the purchase price after the property was bought nearly $100,000 and, therefore, acquired an interest in the lease so that when it was sold part at least of the proceeds was community property. Even if it be true that the community did pay a large amount of the deferred purchase price, that would not give it an interest in the property. At the most the community would have a lien on the property for the amount contributed by it, for the evidence does not show that the community at the time of the purchase of the lease had assumed any liability for the payment of the deferred installments of the purchase price. *Horton* v. *Horton, supra; Legg* v. *Legg,* 34

Wash. 132, 75 Pac. 130. This liability rested solely upon Ruby C. Barnes.

■ Whether, however, the community contributed anything at all to the payments made upon the Harris note and mortgage depends upon whether the earnings of the hotel during the six years it was owned and operated by Mrs. Barnes should be considered as community or separate property. We have held in *Rundle* v. *Winters, supra,* as follows:

"Where either spouse is engaged in a business whose capital is the separate property of such spouse, the profits of the business are either community or separate in accordance with whether they are the result of the individual toil and application of the spouse, or the inherent qualities of the business itself. *Lake* v. *Bender,* 18 Nev. 361, 4 Pac. 711, 7 Pac. 74; *In re Buchanan's Estate,* 89 Wash. 172, 154 Pac. 129; *Jacobs* v. *Hoitt,* 119 Wash. 283, 205 Pac. 414."

And it is urged by plaintiff that it is obvious that the income of the hotel was mainly the product of the individual toil and application of the two spouses rather than of the inherent qualities of the business itself. If it were not for one fact there might be some merit to this contention of plaintiff, but the undisputed evidence shows that both Mr. and Mrs. Barnes were paid for their services out of the income of the hotel, the one by a salary and the other by a drawing account. Under these circumstances, we think the trial court was justified in concluding that the parties themselves considered their personal services, which, of course, belonged to the community, were compensated by the salary and the drawing account and that the profits in excess of that came out of the inherent qualities of the business itself. It is true that Mrs. Barnes testified she paid a considerable portion of her drawing account on the mortgage, but this would not affect the conclusion that the income of the hotel above

the drawing account and salary of her husband was the earnings of the business and the amount paid on the loan from the drawing account is not fixed with sufficient definiteness to establish any lien of the community upon the property for such payments under the doctrine of *Horton* v. *Horton, supra.*

We think the conclusion reached by the trial court that the lease was the sole and separate property of Ruby C. Barnes was sustained by the evidence and the judgment is, therefore, affirmed.

ROSS, C. J., and McALISTER, J., concur.