[Civil No. 1744.   Filed March 22, 1920.]

[188 Pac. 263.]

# F. A. PAULEY, Appellant, v. J. C. HADLOCK, Appellee.

1. HUSBAND AND WIFE—SURVIVING SPOUSE MAY DISPOSE OF INTEREST IN COMMUNITY WITHOUT ADMINISTRATION.—The surviving spouse may dispose of his or her interest in the community real estate without the aid of administration.

2. HUSBAND AND WIFE—INTEREST OF DECEASED SPOUSE IN COMMUNITY PASSES TO ISSUE SUBJECT TO DEBTS.—The interest of a deceased spouse in community real estate passes to the issue of her body, if any, or, if not, to the survivor, subject to payment of community debts.

3. HUSBAND AND WIFE—INTEREST OF DECEASED IN COMMUNITY CANNOT BE SOLD WITHOUT ORDER OF COURT.—Neither the survivor nor anyone else can sell the interest of a deceased spouse in community property, except upon an order of the court in probate proceedings.

4. HUSBAND AND WIFE—COMMUNITY PROPERTY LIABLE FOR COMMUNITY DEBTS.—After the death of wife, community property was liable for community debts, under Civil Code of 1913, paragraph 1101, and husband could not sell his half interest, except subject to such actual or potential encumbrance.

5. HOMESTEAD—CHARGED AGAINST COMMUNITY PROPERTY AFTER DEATH OF SPOUSE.—Where wife died leaving issue, no homestead having been selected, it was the duty of the court, under Civil Code of 1913, paragraph 866, to carve out of the community property a homestead, and such homestead was a burden upon the community property, subject to which the surviving husband took his interest.

6. SPECIFIC PERFORMANCE—CONVEYANCE OF MERE INTEREST IN LAND NOT ENFORCED UNDER CONTRACT FOR CONVEYANCE OF THE WHOLE IF

———————

6. Intervening rights of third persons as affecting right to specific performance, note, 140 **Am. St. Rep.** 60.

PREJUDICIAL TO RIGHTS OF THIRD PERSONS.—Where widower in
good faith contracted to sell community real estate, and he could
not convey his interest without inflicting injury or harm to his
minor children's undivided one-half interest, and the purchaser
knew before action commenced that the widower was legally in-
capacitated from performing his contract, a court of equity will
not decree specific performance and require the widower to perform
to the extent of his ability and to convey his half interest, not-
withstanding the rule that a court of equity will require the vendor,
ordinarily, to perform his contract of sale to the extent of his
ability, allowing abatements to the vendee for any deficiency in
title, quantity, or quality of estate.    –

7. APPEAL AND ERROR—DECREE NOT REVERSED AS TO QUESTION NOT
DISTINCTLY PROPOUNDED TO TRIAL COURT.—Where it was not dis-
tinctly and specifically propounded to the trial court for his judg-
ment that plaintiff, in an action for specific performance of a con-
tract to convey community property, made by a widower having
only a half interest therein, was entitled to a conveyance of such
half interest with abatement of the purchase price, a judgment
denying specific performance of any part of the contract will not
be reversed on appeal.

8. SPECIFIC PERFORMANCE—GRANTING A MATTER OF DISCRETION.—Courts
may exercise discretion and either refuse or grant specific per-
formance, according to the equities of the case, but such discretion
must be based upon reason and sound judgment.

APPEAL from a judgment of the Superior Court
of the County of Maricopa. F. H. Lyman, Judge.
Affirmed.

Mr. G. W. Silverthorn, for Appellant.

Messrs. Phillips & Norviel and Messrs. Alexander
& Christy, for Appellee.

ROSS, J.—Appellant, Pauley, instituted this action
to compel appellee, Hadlock, to specifically perform
an optional contract of sale of forty acres of land
situate near Mesa, Maricopa county, Arizona. On
August 27, 1917, appellee entered into a written lease
of the land to appellant for one year, dating from

---

8. Discretion of court as to granting or refusing specific performance,
note, 128 Am. St. Rep. 384.

October 1st, for a rental consideration of $800, payable in monthly payments of $66.65, and agreed therein that appellant might purchase the premises on or before October 1, 1918, for $8,500. Appellant took possession, paid the agreed rent, and on October 1, 1918, tendered the appellee $8,500 and demanded a deed of the property. Appellee refused or declined to accept the agreed purchase price and to execute a deed conveying the premises to appellant, giving as a reason therefor that the land was community property and that therefore he was without power to perform his contract of sale. That it was community property is not disputed.

Subsequent to the acquisition of title to the land by appellee, his wife died, leaving surviving her four minor children and her husband, the appellee. She had been dead about sixteen months at the time of the execution of the lease and option. The appellee, it seems, entered into the contract of sale believing that he could lawfully carry it out. He did not learn that the community character of the land was in the way of his fulfilling his agreement until a short time before October 1st, when he consulted a lawyer and was told or advised of his inability to convey. It is also a fact the appellant did not know the land was community property, or, if he did, that it would interfere with appellee's performing his contract, until shortly before suit was filed.

The pleadings and the trial, proceeded upon the theory that both parties had entered into the contract in perfect good faith and under the belief that the grantor of the option had the power to do what he had agreed to do. While witnesses were sworn and testimony taken, there was no real controversy or dispute of fact. The parties might as well have stipulated the facts. On the date of the alleged

breach of the option, October 1, 1918, the land was worth approximately $3,500 more than the price fixed in the option. In appellee's answer and at the trial it appeared that after suit was commenced letters of administration upon the estate of appellee's deceased wife had been taken out, and that the land in question was listed as part of her estate; also that there were some $2,000 in community debts outstanding.

The prayer of the complaint was in the alternative, that is, that the appellee be required to execute and deliver to appellant a good and sufficient warranty deed conveying the fee-simple title to said premises, or such title or interest as he might have therein if he had not the fee-simple title thereto; or, if that be impossible, that appellant have judgment for $3,500 damages, and for such other relief as to the court seemed just and proper in the premises.

The learned trial judge refused appellant any relief whatever, and ordered judgment dismissing the complaint, and that appellee have his costs.

The appellant contends that under the undisputed facts and the law the appellee was, at the date of the option, the owner, with power and right of alienation, of an undivided one-half interest in the land, and that the court erred in not decreeing specific performance of the contract to that extent. He makes no assignment upon the failure of the court to assess his damages, and necessarily waives any claim of error or prejudice because that prayer of his complaint was denied. His sole contention, as we understand it, is that the court should have ordered the appellee to deed to him an undivided one-half interest in the forty acres with an abatement out of the agreed purchase price for any deficiency in title, quantity or quality of the estate.

It is settled by decisions of this court that the surviving spouse may dispose of his interest in the community real estate without the aid of administration. *La Tourette* v. *La Tourette,* 15 Ariz. 200, Ann. Cas. 1915B, 70, 137 Pac. 426; *Molina* v. *Ramirez,* 15 Ariz. 249, 138 Pac. 17. By the same decisions it is equally well settled that the interest of the deceased spouse passes to the issue of her body, if any, or, if not, to the survivor, subject to the payment of community debts. In the present case there were four minor children, and in them was vested title to an undivided one-half upon the death of their mother. This one-half appellant clearly had no right to option or sell. Indeed, no one could sell it except upon an order of the court in probate proceedings. The inability of appellee to fully perform his contract is therefore apparent, and, as we shall see, it is very difficult to determine just what estate he could, of his own motion or under an order of court, convey to appellant.

The community property is liable for the community debts. Paragraph 1101, Civ. Code. It appears that the indebtedness outstanding when the wife died and at the time of trial was something over $2,000, and that this forty acres of land was the sole asset of the community out of which this indebtedness could be satisfied. Appellee's interest was subject to this indebtedness, and the purchaser of his one-half interest would take it with this actual or potential encumbrance.

But this is not the only impediment in the way. Under paragraph 866, Civil Code, it is made the duty of the court, if no homestead had been selected and recorded prior to the wife's death, to select, designate and set apart a homestead for the use of the surviving husband and minor children out of the com-

munity property. The California courts, in passing upon the same statute, have said:

"In *Phelan* v. *Smith,* 100 Cal. 166, 34 Pac. 669, it was said: 'The right to have a probate homestead carved out of the estate is in the nature of a charge upon the estate, from which the widow, under her right of succession, could no more discharge it than she could free the estate from its liability for the debts of her deceased husband.' The homestead is, in a proper case, a charge upon the estate of the deceased, created by the law, and is one of the burdens upon the community property, subject to which the surviving wife takes her interest therein, equally with the other limitations prescribed by the Civil Code." *In re Still's Estate,* 117 Cal. 509, 49 Pac. 463.

The wife's estate is, according to the evidence and the pleadings, now in the course of administration, and this necessarily places this forty acres of land within the jurisdiction of the court of probate, so that it, or so much thereof as may be necessary, may be sold to satisfy the indebtedness, and also it is made in the circumstances the imperative duty of the court to carve out of it a homestead for the surviving husband and children. So it is seen that, while the appellant can sell or dispose of his undivided one-half interest without administration, the purchaser gets a very equivocal and uncertain title. The homestead, under our statute, to be carved out of the community property should be of a value not to exceed $4,000. If the land, as the evidence tended to show, was of the value of $300 an acre, it would take thirteen and one-third acres for the homestead, leaving twenty-six and two-thirds acres to be divided between the appellee and the minor children, which would be subject to the payment of the outstanding indebtedness of the community. Thus it will be seen if these difficulties could be adjusted and provided

for in a decree, the acreage that the appellant would receive would be very small, compared with what his contract or option called for.

The inability of the appellee to perform his contract because of the interest of the minor children, the community debts, and the homestead right in the property, were known to the appellant before he commenced this action. Although the prayer of his complaint would indicate a willingness on his part to accept performance of the contract by appellee to the extent of his ability, he tried his case upon the theory that he was entitled to full performance. There is nothing in the record evincing a disposition or willingness on his part, except perhaps in his prayer, to accept from appellee a deed to a part of the land. It is asserted by the appellee, and not controverted by appellant, that no suggestion was made in the trial court that appellant would be satisfied with anything less than full performance, and that his present contention that he is entitled to a decree for performance to the extent of appellee's ability was first presented in his brief upon this appeal. We are not advised from the record what the appellant would have done had appellee tendered him the title he had.

Not forgetting the rule that a court of equity will require the vendor, ordinarily, to perform his contract of sale to the extent of his ability, allowing abatements to the vendee for any deficiency in title, quantity or quality of estate (25 R. C. L. 249, § 53; 36 Cyc. 740), we are not satisfied that this is a case in which that rule should be enforced: First, because it does not appear that the appellee has been guilty of any misconduct or fraud; second, because it does not appear that specific performance, in whole or in part, could be required without inflicting injury or harm to the minor children's undivided one-half interest; third, because it appears that the appellant

knew that the appellee, when this action was commenced, without any fault of his own, was legally incapacitated from performing his contract.

Upon a state of facts somewhat analogous to the facts in this case, in *Morgan* v. *Bell*, 3 Wash. 554, 16 L. R. A. 614, 28 Pac. 925, it appearing that the seller did not have legal capacity to perform his contract and make title, and that the purchaser knew these facts when he brought his suit, it was decided that the court was without jurisdiction to decree specific performance. See, also, *Konnerup* v. *Frandsen*, 8 Wash. 551, 36 Pac. 493, where the Bell decision is explained. In such a case it would seem that the purchaser or optionee is relegated to his action in damages.

We might add, as a fourth reason for refusing specific performance in part as now contended for, that the question was not distinctly and specifically propounded to the trial court for his judgment. In all fairness, the trial court was entitled to be informed that the question was not only within the issues, but insistent and vital, and presently before him for his decision.

Generally speaking, no party to a contract has an absolute right to have it specifically performed. Courts may exercise discretion and either refuse or grant it according to the equities of the case. The discretion must be based upon reason and sound judgment. Specific performance may not be capriciously or arbitrarily refused or enforced.

"No positive rule can be laid down by which the action of the court can be determined in all cases. In general it may be said that the specific relief will be granted when it is apparent, from a view of all the circumstances of the particular case, that it will subserve the ends of justice; and that it will be withheld when, from a like view, it appears that it will produce hardship or injustice to either of the parties. It is not sufficient, as shown by the cases cited, to

call forth the equitable interposition of the court, that the legal obligation under the contract to do the specific thing desired may be perfect. It must also appear that the specific enforcement will work no hardship or injustice, for if that result would follow, the court will leave the parties to their remedies at law, unless the granting of the specific relief can be accompanied with conditions which will obviate the result. If that result can be thus obviated, a specific performance will generally, in such cases, be decreed conditionally.'' *Willard* v. *Tayloe*, 8 Wall. 557, loc. 567 (19 L. Ed. 501 [see also, Rose's U. S. Notes]).

We do not see how a performance in this case can be conditionally decreed so as to protect all parties and prevent hardship or injustice.

The judgment of the lower court is affirmed.

CUNNINGHAM, C. J., and BAKER, J., concur.