[Civil No. 3407. Filed January 28, 1935.]

[40 Pac. (2d) 102.]

ORA LOVIN, Appellant, v. FANNY LOVIN WOODWARD, ELIZA WEBB LOVIN WAKEFIELD and STANLEY F. WAKEFIELD, as Administrator of the Estate of Ruby Lovin, Deceased, Appellees.

Mr. Louis L. Wallace and Mr. Carl D. Hammond, for Appellant.

Mr. E. Elmo Bollinger and Mr. J. W. Faulkner, for Appellees.

LOCKWOOD, C. J.—This action was brought by Ora Lovin, hereinafter called plaintiff, against Fanny Lovin Woodward and Eliza Webb Lovin Wakefield, as individuals, and Stanley F. Wakefield, as administrator of the estate of Ruby Lovin, deceased, hereinafter called defendants, to quiet title in her to certain lots in Kingman, Arizona. Defendants answered with a general denial, and then cross-complained, alleging that Fanny Lovin Woodward and Eliza Webb Lovin Wakefield were together the owners of an undivided one-half interest in said lots and praying that the title to such interest be quieted in them. The case was tried to the court with a jury and judgment was rendered quieting title to an undivided one-half interest in the lots in Ora Lovin and to the remaining undivided one-half interest in Fanny Woodward and Eliza Webb Lovin Wakefield. After the usual motion for new trial was overruled, this appeal was taken.

There are seven assignments of error, presented under five propositions of law, but we think it necessary to consider only the assignment that the judgment is not supported by the evidence.

There is practically no conflict in the evidence material for a decision of the case, and the facts established by that evidence, making all reasonable assumptions therefrom in favor of defendants, as we must do under our oft-repeated rule, may be stated as follows: Henry Lovin, at that time a single man, came to Kingman in the year 1894. He worked at various things and prospered reasonably until January, 1897. At that time he was about to be married to one Ruby Roe, whose parents were then purchasing, on the installment plan, lots 19, 21, 23, 25, 27 and 29 in block 10 in Kingman, which lots we shall, for brevity, hereinafter call the Roe property. They were living on the property, but were unable to finish paying

out their contract, and, rather than see it revert to the owner, told Lovin that if he would pay it out, they would transfer it to him. Lovin accepted the offer and paid the balance due of $350, and on January 14, 1897, the Roes deeded the lots to him. Thereafter, and on March 21st of the same year, Henry Lovin and Ruby Roe were married and lived together as husband and wife until some time in 1911, when the latter died, leaving surviving her her husband and two children, Fannie Lovin Woodward and Eliza Webb Lovin Wakefield, defendants herein, then twelve and three years of age. In November, 1897, some eight months after the marriage, one J. S. Withers purchased from Charles H. Logan lots 9, 11, 13, 15 and 17 in block 10 in Kingman, the last three of which lots we shall hereinafter refer to as the Withers property. August 13, 1898, Withers and his wife mortgaged the five lots last mentioned to Henry Lovin and, on March 21, 1900, deeded them to the latter.

After the death of Ruby Roe Lovin, no attempt was made to administer her estate until 1932, when the present administrator was appointed.

On February 19, 1926, Henry Lovin, who had in the meantime married plaintiff, made and recorded the following declaration of homestead:

"Know all men by these presents: That I, Henry Lovin, do hereby declare that I am the head of the family; that I am married; that the name of my wife is Ora Lovin; that my family consists of my said wife and one minor child, Eliza Lovin; that I have one married daughter over 21 years of age, to wit: Fanny Lovin Woodward; that I am at the time of making this declaration actually residing on the premises hereinafter described, and that I claim said premises as a homestead; that the premises so claimed by me as a homestead are the real property situated in the Town of Kingman, Mohave County, State of Arizona, described as follows, to-wit: Lots 13, 15, 17, 19, 21,

23, 25, 27 and 29 in Block 10 of Kingman Townsite, as shown and delineated upon the official map or plat of said Townsite of Kingman on file and of record in the office of the County Recorder of said Mohave County, together with dwelling house and all the appurtenances thereto; that the said real estate is in one compact body; that I estimate the actual value of said premises as not to exceed $4,000.00.

"In witness whereof, I have hereunto set my hand and seal this 19th day of February, 1926.

"HENRY LOVIN [Seal].

"(Acknowledged Feb. 19, 1926.)"

Thereafter, on December 5, 1930, Henry Lovin deeded to Ora Lovin, his wife, both the Roe and the Withers property as her sole and separate estate.

There was some other testimony in the record, but, so far as we can determine, it has no bearing on the real issue in the case, which is whether either the Roe or the Withers property was the separate estate of Henry Lovin at the time of the death of Ruby Roe Lovin in 1911, or whether they were then the community estate of herself and Henry Lovin.

■ Paragraphs 2100 and 2102, Revised Statutes of Arizona 1887 (Civ Code), in force at the time both the Roe and Withers properties were acquired by Henry Lovin, read as follows:

"2100. (Sec. 15.) All property both real and personal of the husband owned or claimed by him before marriage and that acquired afterward, by gift, devise, or descent as also the increase, rents, issues, and profits of the same, shall be his separate property, and all property both real and personal of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, as also the increase, rents, issues and profits of the same, shall be her separate property."

"2102. (Sec. 17.) All property acquired by either husband or wife during the marriage, except that which is acquired by gift, devise or descent, or earned by the wife and her minor children, while she has

lived or may live separate and apart from her husband, shall be deemed the common property of the husband and wife, and during the coverture may be disposed of by the husband only.''

These sections have been carried forward almost *verbatim* in the Civil Codes of 1901 (pars. 3102, 3104) and 1913 (pars. 3848, 3850), and Revised Code 1928 (§§ 2172, 2173). The language of these sections is so plain that it would seem they were almost beyond the necessity of construction.

All property of either spouse owned or claimed before marriage is the separate property of the spouse so owning or claiming it.

All property acquired in the name of either spouse after marriage is presumptively community property. *La Tourette* v. *La Tourette,* 15 Ariz. 200, 137 Pac. 426, Ann. Cas. 1915B 70. The latter presumption, however, may be overcome by showing the property was acquired by the separate funds of either party, or that the parties intended it to be separate property. *Charauleau* v. *Woffenden,* 1 Ariz. 243, 25 Pac. 652; *Jones* v. *Rigdon,* 32 Ariz. 286, 257 Pac. 639.

The character of the real estate is fixed when it is acquired, regardless of whose funds may later improve the property. *Horton* v. *Horton,* 35 Ariz. 378, 278 Pac. 370; *Ammerman* v. *Crozier,* 37 Ariz. 181, 291 Pac. 995.

The record shows the Roe property was acquired by Henry Lovin before his marriage, and it is therefore his separate property, for, since there was then no community existing, community funds could not have contributed to its purchase. Nor is there any evidence, as suggested by defendants, that any portion of the purchase price was a gift to Ruby Roe Lovin by her parents. The testimony of Mrs. Roe is:

''Well, we owed something on that property that we couldn't pay and Mr. Lovin was about to marry my

daughter and was about to build a house, and my husband in my presence told her that if Mr. Lovin wanted to take over the property that we would let him have it for what we had failed to pay on it, and give him a deed.''

This may show the inducement to the sale was the prospective marriage, but it utterly fails to show a gift or sale to either Ruby Roe or to the expected community, which did come into existence two months later. Under the law and the evidence, the Roe property was at all times after its purchase by Lovin his separate property, and, as such, subject to be disposed of by him alone, and defendants had no interest therein after the death of their mother.

On the other hand, the Withers property, having been acquired during coverture, was presumably community property, and, on the death of Ruby Roe Lovin intestate, an undivided one-half thereof vested in her daughters, subject to the community debts, if any. *Pauley* v. *Hadlock,* 21 Ariz. 340, 188 Pac. 263. There was some attempt made to show that the money loaned by Lovin to Withers, which was the real consideration for the transfer of the land, was Lovin's separate property. But the evidence on this point is too vague and indefinite to overcome the presumption of community.

There is evidence of a declaration of homestead by Lovin some fifteen years after the death of Ruby Roe Lovin and after he had married plaintiff. This declaration was evidently made under the provisions of paragraph 3288, Civil Code (Revised Statutes of Arizona 1913), and no steps were taken by the probate court under paragraph 866, Id., to set aside a homestead from the community estate or from the separate property of Ruby Roe Lovin. Such being the case, it was within the power of Henry Lovin to dispose of all his interest in the homestead by a deed to plaintiff. *Luhrs* v. *Hancock,* 6 Ariz. 340, 57

Pac. 605. He could not, however, by the declaration or deed, in any manner affect the vested rights of his children in the Withers property.

We are of the opinion that, under the law and the evidence, the title to the Roe property should have been quieted in plaintiff as against defendants, and that the title to the Withers property was properly disposed of.

The judgment is reversed and the cause remanded with instructions to render judgment quieting the title of the property involved in the action in accordance with the views expressed in this opinion.

McALISTER and ROSS, JJ., concur.