[Civil No. 4081.   Filed December 18, 1939.]

[97 Pac. (2d) 218.]

SARA J. GREER, as Administratrix of the Estate of ARZA L. GREER, Deceased, Appellant, v. ADOLPH GOESLING, Appellee.

Mr. M. V. Gibbons and Mr. A. S. Gibbons, Attorneys for Appellant.

Mr. Guy Axline, Attorney for Appellee.

LOCKWOOD, J. — This is an appeal by Sara J. Greer, as administratrix of the estate of Arza L. Greer, deceased, hereinafter called defendant, from a judgment in favor of Adolph Goesling, hereinafter called plaintiff. The factual situation which led up to the

appeal may be stated as follows: Arza L. Greer died and defendant was appointed the administratrix of his estate. Among the assets of the estate were certain cattle which were mortgaged to plaintiff to secure the payment of a note signed by deceased and dated October 20, 1935, in the sum of sixteen hundred dollars, which note was given in partial renewal of a previous note for two thousand dollars. At some time prior to November 12, 1937, under order of the probate court defendant had sold the cattle covered by the mortgage, and notified plaintiff that she desired to pay the note above referred to. On the date last mentioned, she delivered to plaintiff her check for the face of the note and interest, whereupon plaintiff endorsed the note as paid in full and delivered it to defendant, and caused the mortgage on the cattle to be satisfied in the office of the county recorder. Before the check was presented for payment, defendant notified the bank on which it was drawn that she had stopped payment thereon, and redelivered to plaintiff the note and chattel mortgage in question, and refused to make payment on the note. Plaintiff thereupon within the statutory time presented a claim to defendant for the amount of indebtedness shown by the note, which she rejected. Plaintiff then filed this action, reciting the foregoing facts in his complaint, and prayed judgment for the amount due on the note, together with a foreclosure of the mortgage on the cattle, and that the proceeds of said foreclosure be applied on the payment of the mortgage, and that any balance due be declared a general claim against the estate of deceased.

Defendant answered, admitting the execution of the note and mortgage by deceased, but setting up the following defenses: (a) Payment in full by deceased in his lifetime; (b) that the money represented by the note was a loan to deceased for the benefit of a third party and was not borrowed for nor used by deceased

for the benefit of the community and that he was, in reality, only an accommodation signer of the note; (c) that there had been paid on said note one thousand dollars in usurious interest. The money derived from the sale of the cattle had, prior to the trial of the cause, been impounded in the First National Bank of Holbrook, Arizona, to await the further judgment of the court.

A jury was impaneled to try the issues raised by the pleadings. At the conclusion of the testimony, the court took the case from the jury on the ground that there was no material controverted issue of fact for it to decide, and that since the suit was an equity case, the jury sat only in an advisory capacity, and the proper method of procedure, under the circumstances, was to discharge the jury, rather than instruct it to return a verdict in favor of plaintiff. After the jury was discharged, the court rendered judgment against defendant for the amount of the note, plus interest and attorney's fees; that the money received from the sale of the cattle was subject to the lien of the mortgage and should be paid over to plaintiff, and ordered the mortgage foreclosed, with a general judgment against defendant for any deficiency.

There are eight assignments of error, which we shall consider in the manner which seems advisable. The first issue is whether it was error for the court to discharge the jury. This depends upon two questions, the first being as to the nature of the suit, and the second as to the evidence.

■■ It is urged by defendant that this is an ordinary proceeding to recover a debt and, therefore, an action at law. It is the contention of plaintiff that it is a suit to foreclose a mortgage and, therefore, an equitable proceeding.

If the contention of defendant is right, then the court should not have discharged the jury, even if there was

no controverted issue of fact to be decided, but should have instructed it to return a verdict in favor of plaintiff. If, however, it was an equitable proceeding then, though the verdict of the jury is only advisory in such a case, if there was a disputed issue of fact on the evidence, it was the duty of the court to submit that issue to the jury, for as we have said in the case of *Stukey* v. *Stephens,* 37 Ariz. 514, 295 Pac. 973, 974, ''while the court need not heed the advice of the jury, it must harken to it.'' If, on the other hand, the evidence was such that there was no controverted issue of fact, it was proper for the court to discharge the jury and render judgment in accordance with the evidence. *Wallace* v. *First Nat. Bank,* 39 Ariz. 451, 7 Pac. (2d) 586.

■■ Upon an examination of the pleadings and the record, we are satisfied that this was an equitable proceeding, for it asks for the foreclosure of a lien on mortgaged property. *Consolidated Wagon & Machine Co.* v. *Kay,* 81 Utah 595, 21 Pac. (2d) 836; *Judson Mills* v. *Norris,* 166 S. C. 422, 164 S. E. 919; 1 Pom. Eq., 4th ed., par. 181. It is true that the mortgaged property had already been sold by order of the court and converted into cash, but the cash in the bank of Holbrook was subject to the same lien as the cattle had been before the sale. *Re Varley & Bauman Clothing Co.,* (D. C.) 188 Fed. 761; 37 C. J. (Liens), par. 24, and cases cited. The question then is whether there was any controverted issue of fact raised by the evidence that the court was required to submit to the jury for its advice on the issues.

We have examined the transcript of record carefully as to all of the issues raised by defendant's answer. On the question of payment, there was evidence that a large sum of money had been paid by deceased to plaintiff both before and after the execution of the original note of two thousand dollars which, if it had

all been applied upon said note, would have paid it either in full or almost so. On the other hand, there was the direct testimony of witnesses that all of such money which was not specifically credited on the two thousand dollar note, was applied to other indebtedness which it was shown had at various times been due from deceased to plaintiff, and there was no evidence offered on the part of defendant contradicting this. We have, therefore, definite evidence of payment on certain specific debts on the one hand, and merely the evidence of payments which could have been applied on the two thousand dollar note, without any evidence of such application. Under these circumstances, certainly there was no conflict in the evidence from which a jury would be authorized to hold that the indebtedness evidenced by the sixteen hundred dollar note was paid.

The second defense is that of usury. Here again there was evidence of certain payments which, if they had been made on the two thousand dollar indebtedness, might perhaps have been usurious. There was no evidence on behalf of defendant that they had been so paid, and there was positive evidence on behalf of plaintiff that they had been paid in such a manner that there was no usurious interest. Again we have merely a possibility as opposed to definite and positive testimony, and a jury would not have been justified on such evidence in finding that usurious interest had, as a matter of fact, been paid.

The third defense was that the indebtedness for two thousand dollars was not a community debt because it was money borrowed by deceased for the benefit of his brother, and not for the benefit of the community, and it is urged strenuously that defendant offered evidence tending to show this which was rejected by the court. Under the law of Arizona all

property acquired during coverture is presumed to be community property, and it may not in any manner be encumbered by either spouse for a personal debt or obligation. *Cosper* v. *Valley Bank,* 28 Ariz. 373, 237 Pac. 175. On the other hand, the husband has the entire management of the community during coverture, with two limitations, (a) he may not encumber the realty of the community without the consent and signature of the wife, and (b) he must exercise that control for the benefit of the community and not in fraud upon the interest of the wife in such community. *La Tourette* v. *La Tourette,* 15 Ariz. 200, 137 Pac. 426, Ann. Cas. 1915B 70; *Coe* v. *Winchester,* 43 Ariz. 500, 33 Pac. (2d) 286. Since the property mortgaged was personalty, and the presumption is that the money borrowed was for the benefit of the community, the signature of the wife of the deceased to the note and mortgage was entirely unnecessary. But, it is contended, the money was not borrowed for the benefit of the community and defendant should, therefore, be permitted to introduce evidence to this effect.

 If this were an action between the surviving wife and a representative of the estate of deceased, it would be quite proper, if the issue were made by the pleadings, to permit the wife to show that the indebtedness was, in reality, a personal and not a community one. But when it is an action between the representative of the estate of the husband and a creditor, we think the situation is different. When the community status is dissolved by death, the community estate becomes *ipso facto* in effect two separate estates, except as to the rights of community creditors. The surviving spouse takes half of the estate, not as matter of descent but as a matter of right, subject, however, to the community debts. *Pauley* v. *Hadlock,* 21 Ariz. 340, 188 Pac. 263. The remaining half goes to the heirs of the deceased spouse under the statute of descent and

distribution, or to devisees and legatees by will, but is subject (a) to its ratable share of community debts, *Pauley* v. *Hadlock, supra,* and (b) to any separate debts of the deceased. *Jackson* v. *Griffin,* 39 Ariz. 183, 4 Pac. (2d) 900.

The defendant in this case, in her capacity as administratrix, was not in a position to raise the issue that the indebtedness was the separate one of deceased. She should have intervened in her individual capacity as surviving wife if she desired to claim that her interest in the community estate was not subject to the claim. Further than that, there is no allegation nor suggestion anywhere in the pleadings that plaintiff did not lend the money to deceased in perfect good faith, believing at the time, and having reason to believe, that the money was to be used for community purposes. We think before a surviving wife can make a claim as against a creditor that an indebtedness, which on its face is a community one, was really a separate one incurred in fraud of her rights, she must allege that the creditor knew, or had reason to know, that the indebtedness was not a community one. He is in effect, in the absence of evidence to the contrary, in the situation of a *bona fide* purchaser in good faith, and has the rights and protection given by the law to such a creditor. There is nothing in the pleadings to suggest in any manner that plaintiff knew or had reason to know that the obligation was not a community one. Under these circumstances, we think the court properly rejected any evidence on this point.

It appears, therefore, there was no evidence to sustain any of the defenses which were offered, and such being the case, there was of course no material controverted issue of fact to submit to the jury.

There is some objection made in regard to the time when the judgment was signed. We have examined

this objection and think it is based on a misconstruction by defendant of the true meaning of rule VII of the Uniform Rules. The record shows that the rule, so far as it is mandatory, was complied with.

No error appearing in the record, the judgment is affirmed.

ROSS, C. J., and McALISTER, J., concur.