[Civil No. 4583. Filed November 15, 1943.]

[143 Pac. (2d) 336.]

## W. H. LAUGHLIN, Appellant, v. IDA M. LAUGH-LIN, Appellee.

Mr. F. Preston Sult, for Appellant.

Messrs. Dougherty, Chandler & Connor, for Appellee.

STANFORD, J.—This case comes on appeal from Pinal County, Arizona. It was tried in said county by a visiting Judge, Honorable Levi S. Udall, of Apache County, sitting without a jury. It is a case that took several days to try due to the fact of there being many pieces of property, some in New Mexico and some in Arizona, besides quite a lot of personal property involved. The appellant herein brought his action against the appellee for divorce, and for the custody of the five minor children of the parties hereto, and the appellant asked the court to declare the status of the property and award to him his separate property as alleged, and that the court determine the status of other property and make an equitable division of same. The parties to the action married in 1921 in Las Cruces, New Mexico. Before married she held, as her separate property, a tract of land consisting of 100 acres in New Mexico, and he held as his separate property land also in that state in the amount of 320 acres.

The property involved in this appeal consists of 200 acres of cultivated land in Pinal County, Arizona. It was divided 120 acres to the appellee and 80 acres to the appellant. The children were given, by the judgment of the court, to the appellee, the mother, and the appellant was required to pay the sum of $200 a month for their support. The other property was divided between the appellant and appellee. It is from that portion of the decree declaring the following property to be community property, and the division of the same that this appeal is taken:

"East Half (E½) of the Northwest Quarter (NW¼) of Section 28, Township Six (T6S) South, Range Eight (R8E) of the G. and S. R. B. & M.; and the West One Half (W½) of the Northeast Quarter (NE¼) of Sec. 28 Township Six (T6S) South, Range Eight (R8E) East of the S. & S. R. B. & M.; and the West One Half (W½) of the East One Half (E½) of the Northeast Quarter (NE¼) of Sec. 28, Township Six (T6S), Range Eight (R8E) East of the G. & S. R. B. & M. Pinal County, Arizona.''

The case was heard on the issues formed by the first amended complaint and answer thereto, and defendant's cross complaint and the answer to the same.

By the pleadings of appellant, it is claimed that at the time of the marriage appellant owned, as his separate property, the N½, Sec. 9, T. 20 S., R. 37 E., in Lea County, New Mexico; that with the rents, issues and profits of said land plaintiff purchased the SE¼ of Sec. 20, T. 6 S., R. 8 E., Pinal County, Arizona, known as the Stevenson Place, and also the E½ of Sec. 21, T. 7 S., R. 8 E., in Pinal County, known as the Cooper Place. Plaintiff alleges that he owns by reason of the inheritance of his father, another piece of property, the description of which he could not, in his pleadings set forth, located in New Mexico.

The plaintiff further claims that at all times he kept separated from the joint funds of the two parties hereto, the income from the above described lands and maintained a bank account in the First National Bank at Roswell, New Mexico, as depository for funds from the Lea County, New Mexico property, and through which accounts all expenses for the operation of said places were paid, and in a bank at Casa Grande through which all income from the Stevenson and Cooper Places in Pinal County, Arizona, and the New Mexico lands were paid.

The appellant still further claims in his pleadings that, at the time of the marriage, appellee herein

owned a farm consisting of approximately 100 acres near Fairacres, New Mexico, and when they were married said land of appellee was encumbered in the total sum of $8,000, and by the joint efforts of both of the parties, said mortgage was discharged, but that the appellee, because of such joint efforts in discharging said mortgage, gave unto the appellant a "Declaration of Lien" in the sum of $5,000 and that the appellant duly recorded same.

By the pleadings of the appellee she alleges that at the time of the marriage appellant owned, as claimed by him, the N½ of said Section 9 located in New Mexico, but that he used the money earned from the separate property of this appellee to expend upon said property, and she claims that the work and labor, money and materials the appellant expended in that respect were in excess of $10,000, and that a large part of said $10,000 was money earned from the separate property of appellee.

And, at the time of their marriage, appellee owned, as admitted by appellant, the said 100 acres of land that had two mortgages upon same aggregating $8,000; that said land was productive and that appellant, upon their marriage, moved upon it with the appellee and with her farmed the same for about three years and from such revenue obtained, discharged said mortgages, but that she was compelled, by his insistence, to give the lien referred to, but the same was without any consideration and also the said lien is now barred by the statute of limitation. Appellee alleges that because of the fact that the appellant controlled all of the business affairs and denied her any right to control same, or to know about the expenditures, accounts and books, she does not know the exact status of the various pieces of property held or owned by them, but that she believes and alleges that the property described as the Steven-

son and Cooper property and the home place of 200 acres in Pinal County, Arizona, is community property.

The final allegation of the appellee in reference to community property is that during the course of the marriage relationship, and particularly during the first ten years thereof, the money earned from the appellee's own property was used to live on and the appellant did save money from his property, and did use some of the same to purchase additional property thereafter, claiming that the additional property was his separate property.

The idea of writing short opinions was ruled out in this case because of the necessity of the foregoing statement by reason of the nature of the case, although the only property involved in this appeal is the 200 acres in one compact body in Pinal County, Arizona, purchased in three parcels at different times and divided by the court, 120 acres to appellee and 80 acres to the appellant.

As to the claims of appellant herein, we quote the following:

" . . . Our contention in this appeal is that this property takes its status from its acquisition, and if the funds used to acquire title to the property were made from plaintiff's separate funds, the title thereto is separate, and remains so to the present time, charged only with a lien in favor of the community for the amount advanced by the community for the purchase. That state of affairs, would result in the plaintiff's having title to at least fifty percent of said land as his sole and separate property, and the remainder of the property to be community, a fact which was not taken into consideration in dividing the property."

The foregoing contention is supported by the following propositions of law:

Property purchased with the separate funds of one of the spouses remains the separate property of the spouse.

Where a spouse purchases property out of his separate funds, the fact that community property was used to make some of the deferred payments, gives the community only a lien on the property for the amount so advanced.

Where property is acquired after coverture, and paid for in part by community funds, and in part by separate funds, it is community in proportion to, and to the extent of the consideration furnished by the community, and separate to the extent and in the proportion furnished by the separate property.

In the first amended complaint of the appellant herein, after he had made his allegations relative to the conduct of his wife and the reasons why he should have a divorce, he commences with paragraph IV relating when their property was acquired and it is important that we quote said paragraph, together with paragraphs V, VI, and VII. After the VIIth paragraph nothing is stated in reference to the ownership of the property. The said paragraphs mentioned are as follows:

"IV. That at the time of the marriage, as hereinbefore set forth, plaintiff possessed as his sole and separate property, the following described property, to-wit: N½ of Sec. 9, T20S. R37E, New Mexico Principal Meridian, Lea County, New Mexico. That plaintiff derived title to said land by patent issued to him by the Government of the United States, in the year 1916, and said land was then, and still is, the sole and separate property of this plaintiff.

"That from the rents, issues and profits of the above described property, plaintiff purchased and still holds as his sole and separate property, the following described real estate, to-wit: SE¼ of Sec. 20, T6S, R8E, G. & S. R. B. and M. Pinal County,

Arizona. This piece is hereafter termed the Stevenson Place. E½ of Sec. 21, T7S, R8E, G. & S R B and M, Pinal County, Arizona. This place is hereinafter termed the Cooper Place. That plaintiff further holds as his sole and separate property a piece, exact description unknown, in New Mexico, obtained by inheritance from his father.

"That at all times plaintiff has kept segregated and separate from joint funds, the income from the above described lands, and maintains a bank account in the First National Bank of Roswell, New Mexico, as depository for funds from the Lea County, New Mexico property, and a bank account in the Casa Grande branch of the Valley National Bank, thru which all income from the Stevenson Place and the Cooper Place is deposited, and thru which account all expenses for the operation of said places is paid.

"That plaintiff also owns as his sole and separate property, one 1941 Buick Sedan Automobile; 20 head of horses; miscellaneous farm equipment, and personal property.

"V. That at the time of the marriage as hereinbefore set forth, the defendant did own title to the following described property: Farm, consisting of 100 acres, more or less, located near Fairacres, New Mexico, Dona Ana County, New Mexico.

"That at the time of said marriage, said land was encumbered with two various real estate mortgages, in the total sum of $8000.00. That plaintiff and defendant did farm said land, and by dint of plaintiff's industry, said mortgages were paid off. That to evidence plaintiff's interest in said land, defendant did execute and deliver to plaintiff, a certain document titled "Declaration of Lien" which declared plaintiff to have a lien to the extent of $5000.00 on said land, which said document is of record in the office of the County Recorder of Dona Ana County, New Mexico.

"That said defendant also has a bank account in the Mesilla Valley Bank of Las Cruces, New Mexico, in which she has deposited proceeds from the aforesaid Dona Ana County land.

"She possesses as her separate property, one horse and miscellaneous household furniture.

"VI.   That the parties possess as community property, the following described property, to-wit:

"One 1941 Dodge Sedan Automobile.

"One Cow, and One Calf.   Two Hogs.

"Miscellaneous Household Furniture.

"Bank account in Valley National Bank, Coolidge, branch.

"VII.   That other property possessed is as follows: E½ of the NW¼, Sec. 28, T6S, R8E, G&S RB&M, Pinal County, Arizona.  W½ of the NE¼, Sec. 28, T6S, R8E, G&SRB&M, Pinal County, Arizona.  W½ of the E½ of the NE¼ of Sec. 28, T6S, R8E, of the G&SRB&M, Pinal County, Arizona.  The above is a connected plot containing 200 acres more or less and hereinafter termed Home Place.

"That the above was originally purchased for the purpose of making a home for the family, and the initial payments thereon were made from the plaintiff's separate funds, and numerous of the later payments were made from separate funds of the plaintiff. That all proceeds from said Home Place, and all expenses of operation were paid from the bank account maintained in the Valley National Bank, Coolidge branch."

It will be observed that in Paragraph IV the appellant commences to describe his separate property and finishes at the close of Paragraph IV; commencing with Paragraph V, among other things, he stated, as will be observed, that the appellee owned 100 acres of land in Fairacres, New Mexico at the time of their marriage. And in Paragraph VI the appellant sets forth what personal community property was owned by the parties. And in Paragraph VII, after having disposed of each spouse's separate property and the community personal property, he starts the paragraph with these words: "That other property possessed is as follows." And he

closes with these words: "hereinafter termed home place."

In the said complaint of appellant he sets forth the ages of the children born as a result of the marriage, the oldest to be sixteen years and the youngest one to be two years. They moved to that place as nearly as we can determine from the evidence, in approximately 1929. The birth of their children upon those premises indicated that it was indeed a home place, as the appellant described it. The home place, however, does not, of course, mean that it is community property, but in our opinion it is the expression of the appellant as he presented the matter in his first amended complaint as to the respective property rights to the parties of this action, and the order in which he presented them, is indeed helpful, although not determinative in arriving at the nature or the class of property that is to be applied to the home place. Although in the prayer of his complaint, he asked first, that he be awarded an absolute divorce; that he be adjudged entitled to the permanent custody of his children; that the court declare the status of property and award and adjudge him the property herein alleged to be his separate property, and that the court determine and declare the status of other property herein set forth and make an equitable division of the same.

Appellee admits the correctness and the propriety of the propositions of law stated by appellant, wherein he cites mainly in support of his contention, the case of *Horton* v. *Horton*, 35 Ariz. 378, 278 Pac. 370, 371, and among the matters decided in that case and relied on herein, is the following:

"Even assuming labor and money was contributed as he claims, this would not make the property community, but would at most give the com-

munity a claim against the separate estate for the amount so contributed. . . . ''

██ And, appellant relied on *Lincoln Fire Insurance Co.* v. *Barnes,* 53 Ariz. 264, 88 Pac. (2d) 533. And in the case of *Lovin* v. *Woodward,* 45 Ariz. 105, 40 Pac. (2d) 102, 104, in which it is stated:

''The character of the real estate is fixed when it is acquired, regardless of whose funds may later improve the property.''

The contention of the appellant on his principle of law cannot be denied.

In the very lengthy presentation of the appellee's side of this case, among many contentions is the claim that the judgment rendered is not to be tested solely by record titles, which is the essence of appellant's argument, but by the determination of whether, upon the whole, substantial justice between the parties has been accomplished, and the appellee shows that appellant kept several bank accounts and was quite accurate in all of his business affairs.

The first payment that was made upon the 200 acres involved in this litigation was the sum of $3,000, paid by the appellant on the first one of the three tracts of land purchased to make up the 200 acres involved, and this definitely was his separate money, as he paid it from an account which he opened in the First National Bank of Roswell, New Mexico, having derived the money from a piece of land in New Mexico which had evidently been leased for the purpose of drilling for oil. The next payment on the first piece of land purchased as the Home Place or the 200 acres in question, was drawn on the Casa Grande Valley Bank, which is now defunct, which money came from the sale of produce on the property of the appellee, the property being the 100 acres located in New Mexico, together, however,

with money derived from products sold off the said Home Place. The next payment was made by the appellant herein by a check on the First National Bank of Fort Worth, Texas, for $3,450 which bank also carried the proceeds from the oil leases referred to and was owned by the appellant herein.

This gives an idea sufficient for the purposes herein to show the source of money applied on the purchase of the property. But, to sum it all up, it is a fact, as contended by the appellant, that a bit more than fifty per cent of the purchase price of the three tracts of land comprising the 200 acres herein involved, was furnished from the separate funds of the appellant; some from the separate funds of the appellee, and some from the income of the property itself. The appellee does contend, however, that other sums, obtained from produce off of her separate property, were consumed in the support of the family, instead of the family being supported by other means.

From cross-examination of the appellant by counsel, we submit the following from the transcript of evidence:

"Mr. Chandler: Q. And that deed is to W. H. Laughlin, and Ida May Laughlin, his wife? A. That is correct.

"Q. And at all times, when you purchased the three pieces of property that you call the Home Place, it was your intention, was it not, that that would be a home place, and it has been treated as community property right straight down through the years? A. Yes sir.

"Q. It has been. A. Yes sir.

"Q. All three pieces, that is, the two hundred acres? A. Yes sir, even to the point that community proceeds from community labor has been invested in the title.

"Q. You don't deny, do you, Mr. Laughlin, that the Home Place is community property? A. I could

not state that because I don't know the status of the Home Place.

"Q. You are not willing to admit it? A. I don't know it."

The first tract purchased comprising the 200 acres was 80 acres bought November 12, 1929, and deeded to "W. H. Laughlin, husband of Ida M. Laughlin." The second tract comprising 80 acres was bought August 19, 1930, and was deeded to "W. H. Laughlin and Ida May Laughlin." The third tract comprising 40 acres was bought October 15, 1936, and deeded to "W. H. Laughlin."

Section 27–805, Arizona Code 1939, reads as follows:

"*Disposition of property—Decree may be made lien on separate property.*—On entering a decree of divorce the court shall order such division of the property of the parties as to the court shall seem just and right, according to the rights of each party and their children, without compelling either party to divest himself or herself of the title to separate property. The court may, however, fix a lien upon the separate property of either to secure the payment of any interest or equity that the other party may have in or to such separate property, or any equity that may arise in favor of either party out of their property during the existence of the marriage relation, or to secure the payment of an allowance for the support and maintenance of the wife or minor children of the parties. The decree shall specifically describe the real property affected and situate in this state. Any separate property of either party of which no disposition is made in the decree shall remain the separate property of such party, free of all claims of the other party; any community property for which no provision is made in the decree shall be from the date of such decree, held by the parties as tenants in common, each possessed of an undivided one-half interest therein."

But, the question that is uppermost here with us is whether at all times, until very recently, did the appellant ever consider the property involved as his separate property. His property over in New Mexico is still intact, and he has a 320-acre tract of land in Pinal County, Arizona, and a 160-acre tract in the same county, and, as we understand it, under cultivation, that he bought with his separate funds, and always kept separate bank accounts concerning that property and always asserted the same to be his separate property, just to the extent that he asserted that property to be his separate property, he had, until a very recent time, treated the property involved herein as community property according to our best understanding of the evidence.

In the case of *McFadden* v. *McFadden,* 22 Ariz. 246, 196 Pac. 452, 454, the court stated:

"The statute does not require the court to favor the party succeeding in the divorce suit, but leaves the whole matter open to inquiry and investigation, and gives the court a freedom controlled only by the court's sense of 'justice and right,' after familiarizing himself with the parties' respective contributions in labor and capital, and their immediate and prospective needs and burdens and deserts. . . . "

It is true that in the case last cited that the appellant contributed a great deal more than the appellee, but we quote this case to show the rights of the court in adjusting community property matters of this nature between husband and wife.

In the matter of the commingling of funds, in the case of *Rundle* v. *Winters,* 38 Ariz. 239, 298 Pac. 929, 931, the court said:

"When separate and community funds are mingled, the commingled funds are presumed to be community, and the burden is upon the one claiming them or any portion thereof to be separate to prove

such fact and the amount by clear and satisfactory evidence.''

And, there can be no doubt in our minds that the funds of both of the parties hereto were thrown into this Home Place, and no doubt, as stated, but that the appellant paid, in separate funds, a little more than fifty per cent, and the appellant has traced his payments to a certainty, yet when over a period of years one has treated his investments of separate funds as community, and on the other hand has cautiously protected other places that he did term his separate property, there can be no doubt in our mind that the trial court, in its discretion, rendered a just decision in this cause.

The judgment is affirmed.

McALISTER, C. J., and ROSS J., concur.